# Board of Revenue Shelby County *v.* Farson, Son & Company.

## Mandamus.

(Decided July 6, 1916. 72 South. 613.)

1. **Courts; Stare Decisis.**—Decisions long acquiesced in and acted upon, and specifically relied upon in the instant case, become a rule of property and the settled law of the case.

2. **Counties; Contracts; Power of Board.**—Considering § 215, Constitution 1901, and sub. 4, § 211, and §§ 131, 133, 138, 2206, 2207 and 2208, Code 1907, it is held that a resolution of the county commissioners to build a courthouse, and issue county warrants in payment thereof, to be redeemed by a special tax was within the power of the commissioners' court, and constituted a valid contract to pay in the manner provided, such sections becoming a part of the contract.

3. **Same; Special Funds; Diversion; Power of Board.**—Under Local Acts 1911, p. 154, when construed in connection with § 3321, Code 1907, such an agreement was binding on the new board of revenue created by such act, and said new board was without authority to divert the special tax fund to road building.

4. **Mandamus; Discretionary Orders; Levy of Tax.**—Mandamus will lie to enforce a valid contract of a board of county commissioners to redeem county warrants by the levy of a special tax.

5. **Counties; Special Fund; Diversion.**—Under § 138, Code 1907, where a special tax has been levied for a special purpose, a board of county commissioners may employ any excess of the proceeds of such tax over the needs of the special purpose, to other legitimate purposes of the county.

APPEAL from Shelby Circuit Court.

Heard before Hon. E. S. LYMAN.

Mandamus by Farson, Son & Co. against the Board of Revenue of Shelby County. From a judgment granting the writ, the Board appeals. Affirmed.

Application by the appellees for mandamus to compel the board of revenue of Shelby county to levy a special county tax of one-fourth of 1 per cent., or a sufficient amount of said tax, to raise money for payment of certain warrants past due in 1916, and to provide for the payment of said warrants falling due in 1917. From the judgment of the court granting such relief respondents prosecute this appeal.

A Branch of this identical litigation is found in the case of *Farson, etc., v. Joe S. Bird, as Treasurer, infra,* 72 South. 550.

The salient features of the case are thus set out in the opinion: "That said board of revenue, as now constituted, has ignored or repudiated said road debt, and declines to levy any tax to pay for the courthouse debt, and has levied in the year 1915 all of said tax of one-fourth of one per centum ($\frac{1}{4}$ of 1%) to pay for the expenses usual and ordinary and incidental to the construction and upkeep of county bridges generally throughout the county and for future bridge debt anticipated at the time the levy was made, which levy is shown in Exhibit D hereto annexed and made a part of this petition; that on account of the orders of the board and the levy of said tax therein made and set out in Exhibit D said J. S. Bird, county treasurer, has refused, and still refuses, to pay the warrants of your petitioner, or any one of the said courthouse warrants registered aforesaid and maturing February 1, 1916, but said treasurer has paid on said county road warrants contracted for by A. T. Newell & Bros. since 1911, and registered since 1911 and held by said assignee of said warrants, the sum of $7,050 on January 20, 1916; your petitioners fear that all of said $12,000 will be paid out by said treasurer to other persons not entitled to the same, unless the writ prayed for herein is granted; that in the opinion and according to the advice given your petitioners, said $7,000 was wrongfully paid out by said treasurer."

"That said Bird as treasurer has failed to apply the money and proceeds derived from taxation—from the levy of said county tax of one-fourth of one per centum ($\frac{1}{4}$ of 1%)—during the year 1915, to petitioners' warrants amounting to $1,565, due February 1, 1916, after demand made upon him after February 1, 1916, to apply said money and pay said proceeds over to your petitioners."

The contracts entered into for the erection and equipment of the courthouse by the court of county commissioners of Shelby county, and which were spread upon the minutes of said court, are made exhibits to the petition. The orders of the court disclose that it was agreed that for the purpose of paying the indebtedness for the erection and equipment of the said courthouse, there should be issued interest-bearing warrants, payable at stated times through a series of years, and that to secure their payment there was ordered levied the special tax of one-fourth of 1 per cent., as authorized by section 215 of our Constitution. It was agreed that such levy be made for each of the years, and from year to year, until the indebtedness had been paid. It

[Board of Revenue Shelby County v. Farson, Son & Company.]

further appears that it was agreed and so ordered that no part of such special tax fund should be used for any other purpose until a sufficient amount had first been levied, collected, and appropriated each year to pay the installments falling due by virtue of said contract. The said special tax revenues, when collected, should be applied exclusively to the annual payments as the same fell due. It was further resolved by the said commissioners that the tax levy and the resolutions ordering the same should constitute a continuing contract between the county and the contractors, and their assigns, and that said levy should not be in any way limited or repealed so long as any of the said warrants or certificates of indebtedness and the interest thereon shall remain outstanding and unpaid. It was further provided that the contractor should have the right to assign and transfer to any person all rights, privileges, claims, or demands against the said county accruing by virtue of said contract, and the right to subrogate such transferee to all rights, demands, liens, and privileges belonging to him under the contract.

HAYNES & WALLACE, SAXON & ACUFF, and RUSHTON, WILLIAMS & CRENSHAW, for appellant. G. W. L. SMITH, for appellee.

GARDNER, J.— (1) In the case of *Talley v. Coms. Ct. Jackson County*, 175 Ala. 644, 39 South. 167, it was said: "It was decided in the case of *Matkin v. Marengo County*, 137 Ala. 155, 34 South. 171, that the issuance by the authority of the commissioners' court of interest-bearing warrants on the county treasurer, payable at a stated time in the future—ten years in that case—for the amount of a debt contracted for the building of a courthouse, was not the issuance of bonds by the county within the provisions of section 222 of the Constitution, and was within the competency of the court of county commissioners. We adhere to and reaffirm that ruling."

In the recent case of *Littlejohn v. Littlejohn*, 195 Ala. 614, 71 South. 449, we again had occasion to consider a question of similar character, involving the issuance of interest-bearing warrants presentable and payable at a future specified date. We there stated that the question as to the regularity and validity of the issuance of such warrants, payable at stated times in the future, to pay for public buildings, roads, and bridges, was settled many

years ago in the case of *Talley v. Jackson County, supra,* and its predecessor, *Matkin v. Marengo County,* 137 Ala. 155, 34 South. 171.

There have doubtless been many investments in securities of this character rested upon these decisions. Indeed, the record in the instant case discloses that the contracts and the orders of the commissioners' court of Shelby county makes special reference to the *Talley Case.* The ruling of that case must therefore be held to have become, so to speak, a rule of property, and to be now accepted as the settled law of this state.

(2) The contracts and warrants here involved find striking analogy to those in the case above cited, and come directly within the influence of these authorities. See, also, in this connection *Bd. Rev. Covington County v. Merrill,* 193 Ala. 521, 68 South. 971; *Weeks v. Bymum,* 158 Ala. 233, 48 South. 489; *South. Ry. v. Cherokee County,* 144 Ala. 579, 42 South. 66.

Under the provisions of section 133 of the Code the court of county commissioners is empowered to erect courthouses and to levy a special tax for that purpose. Section 131 provides that the county buildings are to be erected and kept in order and repair at the expense of the county under the direction of said court, which is authorized to make all necessary contracts for that purpose. This is not only the right of such court, but also its duty.—*Long v. Shepherd,* 159 Ala. 595, 48 South. 675. Section 138 gives the specific authority to levy and collect a special tax, not to exceed in any one year one-fourth of 1 per cent., for the payment of debts incurred in the erection, construction, or maintenance of public buildings, bridges, or roads, and provides that when such tax is collected, it shall be applied exclusively for the purposes for which it was levied. To like effect is section 134. Section 2206 requires that when the tax collector collects any special taxes, he shall specify in the receipt given therefor the purposes for which it was levied and collected, and the succeeding section requires that such taxes be paid over by the collector to the county treasurer and be kept as a distinct fund. Section 2208 requires the treasurer to keep such special taxes separate from all other public funds and to keep a separate account thereof. The record here discloses that the warrants, the subject-matter of this litigation, were duly registered as claims against this special fund, and were prior claims thereon.—Section 211, Code 1907. The board of revenue of Shelby county succeeded the court of county

commissioners. This board were given the same authority and assumed the same liabilities, and were governed by the same rules of law, so far as the question here involved is concerned, as the court of county commissioners.—Local Acts 1911, p. 154; Code 1907, § 2231. Under the provisions of section 215 of our Constitution and the Code provisions above referred to, the court of commissioners for the county of Shelby were authorized to levy the special tax of one-fourth of 1 per cent., to be used exclusively in the payment of the courthouse indebtedness. They had full power to enter into the contract and to agree to levy said special tax. This was so recognized in the *Talley Case, supra,* wherein the court said: "We need not pass upon the question as to the competency of the commissioners' court, when warrants are issued payable yearly for a number of years in the future, to levy in the outset a special tax for each of such years to raise money to meet the warrants maturing each year. It may be that the special levy should be made from year to year; but that concession would not give equity to this bill. If the levy beyond the current year is invalid, the fact would afford no ground for decreeing the invalidity of the contract for the erection of the courthouse and enjoining its execution; nor would a decree, annulling the levy as to the later years, interfere with the carrying out of the contract, or avail complainants in any way, since the commissioners' court would have the power, and, indeed, be under the duty, to make the necessary special levy year by year."

The agreement entered into, therefore, was valid and binding upon the county. The law in force at the time of this contract became a part of the contract. It clearly appears that the parties to the contract looked to the special county tax ordered to be levied, collected, and set apart for the payment thereof, and, indeed, that this special tax was pledged for that purpose.

We have concluded that under our decisions the commissioners' court were authorized to make this contract. The remedy for its enforcement, by means of the special tax to be levied and collected each year, was a most material part of the contract and doubtless a controlling inducement to the contractor.

(3) After a number of years there was a change in the governing body of the county, from a court of commissioners to the present board of revenue, and consequently a change in the personnel of the officers. The board of revenue, it seems, concluded to levy this special tax for other and different purposes than

those for which it was formerly pledged, and have contracted, or propose to contract, a large indebtedness for the building of new bridges and the improvement of public roads, to be paid for out of this special tax, and have issued interest-bearing warrants for such purposes. In short, the effect of their action is to repudiate the agreement of the court of county commissioners that this special tax fund should be exclusively devoted to the payment of the courthouse debt for which it was pledged, and to divert the fund from that purpose to an entirely different one. It is insisted that this cannot be done, upon the theory that it would take away the power to enforce the contract, and therefore, by subsequent legislation, as it were, impair the obligation of the contract, contrary to the provisions of the federal and state Constitutions. We are of the opinion that this insistence is well supported by the authorities. In the case of *Port of Mobile v. Watson,* 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620, is the following language: "Therefore the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the Legislature, or, if they are changed, a substantial equivalent must be provided. Where the resources for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the Constitution of the United States, and is null and void."

The case of *Von Hoffman v. City of Quincy,* 4 Wall. 535, 18 L. Ed. 403, is referred to as the leading case upon this question among the federal authorities. The following from the opinion is of interest in this connection: "When the bonds in question were issued, there were laws in force which authorized and required the collection of taxes sufficient in amount to meet the interest, as it accrued from time to time, upon the entire debt. But for the act of the 14th of February, 1863, there would be no difficulty in enforcing them. The amount permitted to be collected by that act will be insufficient; and it is not certain that anything will be yielded applicable to that object. To the extent of the deficiency the obligation of the contract will be impaired, and if there be nothing applicable, it may be regarded as annulled. A right without a remedy is as if it were not. For every beneficial purpose it may be said not to exist. It is well settled

that a state may disable itself by contract from exercising its taxing power in particular cases. It is equally clear that where a state has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus give cannot be withdrawn until the contract is satisfied. The state and the corporation, in such cases, are equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute; and neither the state nor the corporation can any more impair the obligation of the contract in this way than in any other."

The principles above announced have found frequent reiteration in the following, among other, cases: *Wolff v. New Orleans,* 103 U. S. 358, 26 L. Ed. 395; *U. S. v. New Orleans,* 98 U. S. 381, 25 L. Ed. 225; *Louisiana v. New Orleans,* 102 U. S. 203, 26 L. Ed. 132; *Louisiana v. Pilsbury,* 105 U. S. 278, 26 L. Ed. 1090. The same principle was fully recognized by this court in *Coms. Ct. v. Rather,* 48 Ala. 433, where it was said: "It is now the fixed and well-settled law of this country, that the law in force at the time a contract is entered into becomes a part of it, both as to its stipulations and also as to the remedy, which may be resorted to, to carry the stipulations into effect. And neither the law governing the stipulations nor the remedy can be so altered after the execution of the contract as to impair any rights, whether of remedy or otherwise, which grew out of the contract on the day it was made. The obligation of a contract extends not only to the stipulations, which the parties have agreed upon, but to the rights belonging to the remedy on the day the contract bears date. The mode of enforcement, the practice, may be altered, but not so as to impair the rights of the parties under the contract, as they existed at the date of its execution. * * * Then, there is no such thing as a lapse of the remedy which entered into the contract, for its enforcement at its execution. This lives as long as the contract itself, save in such case as the law declares, that unless it is resorted to within a certain period, it shall not be available at all. In jurisprudence, it is mere sophistry to speak of an obligation without a remedy. The power to enforce the obligation is its legal virtue. When this is gone, there is nothing left upon which courts can act. New remedies may be added, and the former remedies may be left unimpaired, but where the right depends upon contract, the former remedies

[Board of Revenue Shelby County v. Farson, Son & Company.]

cannot be taken away, so as to affect injuriously the contract in its stipulations or in the duration or benefits of its remedies.— *White v. Hart*, 13 Wall. 646 (20 L. Ed. 685)."

(4) It is insisted that the question of levying the special tax and of the purpose for which the same shall be applied is a matter resting in the discretion of the board of revenue or commissioners' court, and cannot be controlled by the writ of mandamus. We are of the opinion, however, that as the commissioners' court had full power to enter into the contract and agree to levy this special tax for this particular purpose, and that as such agreement is valid and binding and a most material part of the contract, it became the legal duty of the court to levy the tax and have the money so collected appropriated to the purpose for which it was pledged. The contract being binding, the question passed beyond the field of discretion and became one of plain duty to carry out the agreement solemnly made. While it is true that the language of the Constitution, as well as of the statute, says that the commissioners' court may levy the tax, yet, having bound themselves by valid agreement to levy the tax, the clear legal duty arises to conform to that agreement, and mandamus is the proper remedy. As was said in the case of *Tarver v. Coms. Ct.*, 17 Ala. 531: "It is true the language of the act is that it shall be lawful for the commissioners' court to levy a tax, etc.; but it is well settled that the word 'may,' or the words, 'it may be lawful' are preemptory when used in a statute, where the public or an individual has a right de jure, that the powers conferred by the act should be exercised.—*Ex parte Simonton*, 9 Port. 390 [33 Am. Dec. 320] ; 1 Ver. 152; *Neuburgh Turnpike Co. v. Miller*, 5 John. Ch. 101, 113. The facts set forth in the petition, and which we are to consider as true, as they were demurred to, show that the petitioner has a legal right to require the commissioners' court to levy and collect a tax sufficient to pay the amount due on the judgment, as well as such sum as the petitioner has paid, if any, on account of his individual liability as commissioner, incurred in the discharge of his duties as such. This is his legal right, and there is no other remedy by which it can be enforced; consequently a mandamus is the proper remedy."

To the same effect is the case of *Graham v. Tuscumbia*, 146 Ala. 449, 42 South. 400.

We are fully persuaded, therefore, that the action of the board of revenue in diverting this special tax from the purposes for

[Board of Revenue Shelby County v. Farson, Son & Company.]

which it was pledged to other purposes is ineffective in so far as it affects the rights of these petitioners as it is practically a repudiation of a valid agreement, and an attempted destruction of the remedy for the enforcement of the payment of these obligations, existing at the time the same were contracted. The board of revenue is only required by the order from which this appeal is taken to levy for the year 1916 the special tax of one-fourth of 1 per cent., or so much thereof as may be sufficient to pay the principle and interest due in February, 1916, and to become due in February, 1917.

(5) We gather from the record that the special tax of one-fourth of 1 per cent. will yield a sum more than sufficient to pay the courthouse installments as they become due, and the surplus, if any, may, of course, be applied to the road or bridge indebtedness referred to herein. The fact that after the issuance of these courthouse warrants and the same had been registered as prior claims on this fund the board of revenue, in disregard of the previous agreement made by the court of county commissioners, issued other warrants for road and bridge purposes, payable to other parties, could have no effect upon the rights of these petitioners, who held the prior claim to the fund.

Subsequent contractors must have had knowledge of the priority of the petitioners' claim, and considerations of this character can have no bearing upon their rights.

We have not overlooked the cases, cited by appellants' counsel, of *Westminster Water Co. v. Mayor,* 98 Md. 551, 56 Atl. 990, 64 L. R. A. 630, 103 Am. St. Rep. 433, and *Gale v. Kalamazoo,* 23 Mich. 344, 9 Am. Rep. 80, but we do not consider that they militate against the conclusion we have here reached.

The record before us discloses that no question was raised as to the validity of these warrants, nor as to the fact that the amounts evidenced thereby are justly due and unpaid. It clearly appears, also, that without recourse to this special tax the petitioners will be without remedy for the enforcement of these obligations. We have held as against the county treasurer, under the facts set out in the case of *Farson v. Bird, supra,* that mandamus would not lie, and that a summary judgment could not be recovered.

We have concluded that petitioners have a clear legal right, and they are without other remedy by which this right can be enforced. As was said in *Tarver v. Coms. Ct., supra,* where there

is a legal right and "no other remedy by which it can be enforced,   *   *   *   mandamus is the proper remedy."

The judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.