177 So. 561

**HERBERT v. PERRY et al.**

2 Div. 107.

Supreme Court of Alabama.

Dec. 4, 1937.

W. F. Herbert, of Demopolis, for appellant.

Geo. Pegram, of Linden, for appellees.

G. W. L. Smith, of Brewton, Fleming & Paul, of Elba, and C. L. Hybart, of Monroeville, amici curiæ.

THOMAS, Justice.

In the absence of a demurrer, or any contention to the contrary, we shall construe and treat the bill in this cause as showing an actual existing controversy between the parties, which we are called upon to determine under the authority conferred upon the courts by our Declaratory Judgment Law (Gen.Acts 1935, p. 777). We shall therefore pretermit consideration of any question as to any technical defect in the pleadings. The parties have treated the pleadings as sufficient to invoke the jurisdiction of the court, and we are proceeding upon that theory.

The bill sought a declaratory judgment under Gen.Acts 1935, p. 777, as to whether Marengo County, through its board of revenue, had the power and authority to issue interest bearing county warrants payable out of the gasoline fund derived monthly from the State of Alabama and collected by the State under the provisions of Schedule 156.11, § 348, of the General Acts of Alabama of 1935 (General Acts of Alabama 1935, pp. 256, 441, 512), approved July 10, 1935, and under the resolution of the county board exhibited for public highway construction. See, also, General Acts of Alabama 1936, Ex.Sess., pp. 28, 29 and General Acts of Alabama 1927, pp. 348, 391, § 157 (Michie's Code, § 1397 (110).

When the several statutes touching the question for decision are considered, it is noted that they are to the effect (1) that the county gas taxes from the state must be used for construction, improvement, maintenance, and supervision of public highways, bridges, and the retirement of bonds issued to that end and for no other purpose (General Acts of Alabama 1935, pp. 441, 511, § 348, Schedule 156.9 and General Acts of Alabama 1936–37, Ex.Sess., p. 280; and analogy found in Houston County v. Covington et al., 233 Ala. 606, 172 So. 882); and (2) the county may expend not exceeding one-third of the amount received from the State from any tax on gasoline for the payment of any debt that may have been theretofore incurred by it in construction of county roads and bridges (General Acts of Alabama 1936, Ex.Sess., pp. 28, 29, and General Acts of Alabama 1932, Ex.Sess., p. 225 et seq.).

We have indicated that the county's power to make contracts is unlimited for the maintenance and construction of public roads and bridges, within the county; except such contracts shall not exceed the periods of time fixed,—ten or twenty years—according to the class within which the county may be, as defined by the General Acts of Alabama 1927, pp. 348, 391, § 157.

Under these statutes counties may issue interest-bearing warrants to road contractors for such work maturing within the period prescribed in the statutes. Littlejohn v. Littlejohn, County Treasurer, 195 Ala. 614, 71 So. 448, and Board of Revenue of Shelby County v. Farson, Son & Co., 197 Ala. 375, 72 So. 613, L.R.A.1918B, 881.

As the proposed warrants are to be·paid solely out of the gasoline fund in question, they do not fall within inhibitions of the Constitution (In re Opinion of the Justices, ·230 Ala. 673, 163 So. 105; Kimmons v. Jefferson County Board of Education et al., 204 Ala. 384, 388, 85 So. 774, and People's Bank of Mobile v. Moore, 201 Ala. 411, 78 So. 789) and are non-negotiable.

It is insisted that the general authority of the counties to issue such warrants was, in effect, excluded because of the passage of the Act of July 8, 1935, General Acts of Alabama 1935, p. 231. True, the latter act deals only with such counties as collect·as much as $40,000 per annum from the fund there provided. The Counties of Marengo and Shelby do not belong to the class set up in the Act of July 8, 1935. General Acts of Alabama 1935, p. 231. It must be noted, however, that the latter act does not repeal in toto or limit the power of the counties as enumerated in section 1347 et seq. of the Code of 1923. Thus said counties are left the right to issue said warrants as are limited to ten years. The last-cited act raises the limitation, as to time, of the counties there dealt with to twenty years.

As noted in the opinion of the learned trial judge, some of the acts limited this fund to the maintenance and repair of the road, as distinguished from the construction; but the last legislative expression on the subject permits said fund to be used for construction as well as maintenance, etc. This question was dealt with in our recent decision in the case of Lyon v. Shelby County, 177 So. 306.[1] The proposal in this case, on the resolution ʻof the county board for construction of public highways, does not extend to maintenance, as is indicated in the exhibit made a part of this pleading. And such resolution, so treated, is approved under the statutes as to construction of public roads and bridges in the county, as classified by the statutes.

The main difference between the Shelby County Case (Lyon v. Shelby County, supra) and the instant case is that in the Shelby County· Case the board of revenue sought to carry out and confirm a co-operative scheme with the Highway Commission, as provided by the quoted provision of the act ˙in said last-cited opinion; whereas, in the present case, the warrants purported to be issued under the general power of the Board of Revenue of Marengo County for the construction, etc. Code of Alabama 1923, § 1347 et seq.; Michie's Code, § 1397 (110), p. 273; and the General Acts of Alabama 1927, pp. 348, 391, § 157.

The decree of the circuit court is therefore affirmed.

ʼAffirmed.

ANDERSON, C. J., and GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

BROWN, J., dissents.

BROWN, Justice (dissenting).

The appellees, the personnel of the Court of County Commissioners of Marengo County, acting as such Court of County Commissioners, at a called meeting held on September 30, 1937, adopted the following resolution:

"Be it resolved by the Board ʻof Revenue of Marengo County, Alabama, in legal session convened, as follows:

"Sec. 1: That Marengo County, a political subdivision of the State of Alabama, be, and it hereby is authorized, empowered and directed to issue warrants for the purpose of constructing, resurfacing or improving roads and highways within the boundary of said county, to be paid out of its receipts from the tax on gasoline or motor oils paid to it monthly by the State of Alabama out of the State tax on gasoline. The· payment of such warrants, both principal and interest, shall be and hereby is expressly limited to the funds received from said tax on gasoline and motor oils.

"Sec. 2: The amount of such warrants is hereby expressly limited to the principal sum of $275,000.00, which shall bear interest at the rate of not exceeding four per cent per annum, such interest being payable semi-annually at the depository of Marengo County, Alabama. Such warrants shall be issued for the principal sum of $1,000.00 each, with interest at not exceeding four per cent from date, shall be numbered serially; and shall run for a term not exceeding ten (10) years, and shall be signed by the President of the Board of Revenue of Marengo County, Alabama, and attested by the Clerk of such Board of Revenue. Such warrants may be registered or may be coupon warrants with interest coupons attached payable semi-annually, as herein provided, at the option of the˙ purchaser or purchasers of such warrants.

---

[1] Ante, p. —.

74

"Sec. 3: There is hereby expressly appropriated out of the receipts of Marengo County of the tax derived on gasoline and motor oils, as now provided by law, an amount equal to one-third of the total of such receipts as a sinking fund for the payment of interest on such warrants and the principal as they mature, as herein provided. Such sum hereby appropriated is to be set aside and segregated from all other county funds out of the amount received each month by Marengo County out of said gasoline and motor oil tax fund as is now provided by law and such sum shall be used solely and exclusively for the purpose of paying the interest on said warrants semi-annually and the principal as they mature, as herein provided. Said warrants shall mature serially and shall be payable after the first year as to principal semi-annually as the sinking fund herein provided for shall accumulate a sufficient amount to pay the principal on such warrants after all of the interest on all of said warrants outstanding shall have been paid semi-annually as herein provided. The warrants shall be paid as to principal beginning with the lowest numbered of such serially numbered warrants and shall be paid thereafter in the next higher number serially until all of such warrants shall be paid and retired.

"Sec. 4: After the payment of the semi-annual interest on said warrants, it shall be the duty of the Clerk of the Board of Revenue of Marengo County, Alabama, to ascertain the amount on hand or in the bank of the sinking fund herein provided, and it shall be his duty to publish in some paper published in Marengo County, Alabama, a notice that certain warrants, denominating them serially, will be paid upon presentation at the office of the county depository and no interest shall accrue on such warrants after thirty days after the publication of the notice of proposed payment and retirement herein provided, but interest shall be paid on such warrants at the rate of four per cent per annum up to and including thirty days after the notice of payment and retirement is first published as herein provided.

"Sec. 5: Such warrants may be sold at public auction or by sealed bids submitted by prospective purchasers or may be transferred to the State of Alabama for it to handle in connection with road building or construction in Marengo County, which shall have been approved by the Board of Revenue and may be used in connection with funds furnished by the State of Alabama or the United States of America, either one or both, but the proceeds of such warrants shall be used exclusively for constructing or resurfacing public roads in Marengo County, Alabama."

Thereupon the appellant, a resident taxpayer, filed the present bill in the circuit court of said county, alleging that he is of full age and was such taxpayer, and:

"That your complainant desires a judicial ascertainment and declaration of the power and authority of the defendants to issue warrants for the purpose of constructing, resurfacing, maintenance, supervision, policing and improving public roads and highways and bridges within the boundary of said Marengo County, to be paid out of its receipts from the tax on gasoline paid to said county monthly by the State of Alabama out of the state tax on gasoline. There is hereto attached and marked exhibit 'A' a copy of a resolution adopted by the defendants on the 30th day of September, 1937, and your complainant asks that the same be made a part of this his Bill of complaint.

"That petitioner believes that said resolution was adopted under power and authority assumed to be granted to counties under section 1347 of the Code of Alabama of 1923, or by an Act of the Legislature of Alabama of 1935, approved July 8, 1935, as shown on page 231 of said Acts.

"That section 1 of said Act provides, 'That the provisions of this Act shall apply to all counties in this State which are now collecting or which may hereafter collect as much as Forty Thousand Dollars per annum from the proceeds of the road or bridge tax of one fourth of one per centum authorized by Section 215 of the present Constitution of the State of Alabama.'"

On this predicate the complainant by the bill propounds to the court, among others, the following interrogatory: "May the counties issue Gasoline Tax interest-bearing warrants for the purpose of constructing, maintaining or improving roads and highways within the boundaries of said counties and pledging for the payment of said warrants the anticipated gasoline tax to be paid said counties monthly by the State of Alabama; could such warrants be so issued as to not be general obligations of the counties and if so issued would such warrants be affected by the *debt limitations placed upon the counties* by the Constitution

of Alabama?" Concluding the statements of the bill with the following: "Your complainant therefore files this, his Bill of Complaint, seeking a judgment or decree under the provisions of the Act of the Legislature of Alabama, approved September 7, 1935, and known as the Uniform Declaratory Judgment Act (Gen.Acts 1935, p. 777) to ascertain and have declared the rights and status of your complainant." (Italics · supplied.)

The bill prays for process against the appellees, and for general relief. *The County of Marengo is not made a party to the suit.*

The defendants accepted service, answered in their official capacity, admitted the allegations of the bill, excepting the allegation that said resolutions were passed in pursuance of the provisions of General Act 177, approved July 8, 1935, Acts 1935, pp. 231, 233, and asserts that said resolutions were passed under the general contracting powers conferred on the Court of County Commissioners by section 1347 of the Code of 1923, and asserts that the County of Marengo is not within the classification of counties dealt with by said General Act 177.

The answer concludes with the following statement: "Respondents reiterate that they waive any defects, irregularities, forms or pleadings in this bill of complaint, and concede that complainant is entitled to have adjudicated the propositions that are propounded in the 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, and 9th sub-sections to his bill of complaint, but that same should and must be limited to Marengo County, Alabama, instead of to counties of Alabama generally."

The appeal is from what is, in form, a final decree.

The law is settled that the presence of a bona fide existing controversy, with subject matter and parties in interest before the court, so that the decree or judgment will be res judicata is essential to the jurisdiction of the courts to entertain proceedings under the Declaratory Judgment Act. Jefferson County v. Johnson, 232 Ala. 406, 168 So. 450; Houston County et al. v. Martin, 232 Ala. 511, 169 So. 13; United States Fidelity & Guaranty Co. v. Hearn et al., 233 Ala. 31, 170 So. 59; Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234.

In the absence of such controversy and parties, consent is inefficacious to authorize the rendition of a binding judgment or decree which will support an appeal. Ex parte Phillips (Phillips v. Reaves et al.) 231 Ala.

364, 165 So. 80; Crabtree v. Miller, 229 Ala. 103, 155 So. 529.

It clearly appears on the face of the record that there is an absence of a bona fide justiciable controversy between the parties, and there is an absence of the corporate defendant, the County of Marengo, sought to be bound by the decree without due process and an opportunity to be heard. The county is a necessary party. · Gillespie et al. v. Gibbs et al., 147 Ala. 449, 41 So. 868. The appeal is therefore due to be dismissed.

However, if jurisdiction and an appealable decree be assumed, the appellant concisely answers his own inquiry. To quote from his brief and argument:

"Evidently recognizing that the gasoline fund under consideration could not be pledged by the Counties, the Legislature, by an Act approved July 8, 1935, General Acts of Alabama, 1935, pages 231, 233, provided that the Counties which were collecting forty thousand dollars or more from the road and bridge tax of one fourth of one per centum, authorized by section 215 of the Constitution of Alabama, might so pledge said revenues within the limitations of that act.

"On September 11, 1935, the Supreme Court of Alabama, [to be correct, a majority of the Justices] rendered an advisory opinion upholding the Act last above referred to. In re Opinion of the Justices, · 230 Ala. 673, 163 So. 105, 108.

"It would appear, therefore, that it has been recognized by the Legislature and the courts that in order for the Counties to pledge their gasoline fund in the manner sought to be done in this case, special legislative enactment so authorizing is necessary."

This conclusion and statement of appellant is essentially sound, except in one respect. The tax dealt with is not levied under section 215 of the Constitution. The counties have no authority to levy the tax sought to be pledged, and no present interest in revenues arising therefrom that have not been brought in and reduced to possession. They are dependent upon the will of the Legislature in respect to the continuance of the levy.

The counties' interest in future revenues of this character is purely anticipatory, a mere hope or expectation, not even potential interest, for under the common law a present interest in the thing that produces the subject of a pledge is essential to a potential interest in the things pledged. Mayer

& Co. v. Taylor & Co., 69 Ala. 403, 44 Am. Rep. 522.

The legislation effected by the passage of the Act of July 8, 1935, was essential, therefore, to overcome this rule of the common law and confer the power on counties to anticipate and pledge revenues arising from such taxation. In re Opinion of the Justices, 231 Ala. 152, 164 So. 572.

In the absence of express authority conferred by the Constitution or the statute, statutory boards are without authority to pledge revenues arising from a tax which such board has no authority to levy, but must depend on the will of the Legislature of the State, which body is not subject to the coercive powers of the judiciary. Counties have no independent sovereignty, and possess only such powers as are expressly given, or necessarily implied in statutes constitutionally enacted. 15 C.J. 419, § 51.

In the School Board Cases—Farned v. Bolding, Supt. of Education et al., 221 Ala. 217, 128 So. 435, and Heustess v. Hearin et al., 213 Ala. 106, 104 So. 273—the power to levy resided in the School Board, and express statutory authority to pledge the proceeds was conferred by the School Code.

The tax dealt with in the cases of, Board of Revenue of Shelby County v. Farson, Son & Co., 197 Ala. 375, 72 So. 613, L.R.A.1918B, 881; Talley v. Commissioners' Court of Jackson County et al., 175 Ala. 644, 39 So. 167, and Matkin et al. v. Marengo County, 137 Ala. 155, 34 So. 171, was levied under the last clause of section 215 of the Constitution, which provides:

"(a) Any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied *exclusively to the purposes for which the same were so levied.*" (Italics supplied.)

There the express authority to levy was conferred on the county and the pledge was made by the provisions of the Constitution.

The Act of July 8, 1935, applies to counties now receiving $40,000 per annum from such taxation, and authorizes the pledge of 50 per cent. of such revenue (sections 1, 2), and expressly repeals all laws and parts of laws in conflict therewith. Section 5 of Act 177, Gen.Acts 1935, pp. 231, 233.

If, as now contended, section 1347 of the Code of 1923, superseded by section 157 of Act 347, approved August 23, 1927, constituting "a general system of legislation pertaining to public roads, highways and bridges," Gen.Acts 1927, pp. 348, 391, be construed as conferring on Court of County Commissioners the power to issue interest-bearing warrants, or other obligations, pledging the county's part of the gasoline tax levied by the State and allocated or divided among the several counties of the State, it would appear that said Act of July 8, 1935, was a useless piece of legislation unless it was the purpose of said act to limit such power to counties receiving as much as $40,000 per annum from such levy. If such power existed under the previous statute, then section 5 of said act repealed the previous statute, in so far as it may be construed to authorize such pledging. Certain it is that said act declares and fixes, for the time, the public policy of the State in respect to such pledging.

The better view, however, is that the general statute, so far as here pertinent originating in the Act of September 22, 1915, Gen.Acts 1915, p. 573, and brought forward by legislation through the Code of 1923, § 1347, into the Act of August 23, 1927, does not authorize or contemplate that Courts of County Commissioners or like County Boards should have the power to pledge such revenues over a period of years for any specific purpose. The original act provided: "But no contract for the construction or repair of any public road, bridge or bridges shall be made where the payment of the contract price for such work shall extend over a period of more than ten years." Gen.Acts 1915, pp. 573, 574, § 1.

This language is clearly a limitation on the power granted and was brought forward through the Code of 1923 into the act of 1927, without change. There is nothing in this language to manifest a legislative intent that revenues anticipated may be pledged. The Legislature was dealing merely with the power to contract a debt for the construction of roads and bridges.

Within this limitation, and the limitation of section 224 of the Constitution, it seems clear that the county may contract for such construction of roads and bridges and pay the contract price by the issuance of interest-bearing warrants, but there can be no basis for the claim that such outstanding unpaid warrants are not debts within the meaning of section 224 of the Constitution.

It is conceded by all that the provision of Act No. 177, Gen.Acts 1935, pp. 231–233,

is not applicable to Marengo County, which is not within the classification of said act.

There is nothing in the Act of August 23, 1927, Acts 1927, pp. 348, 391, § 157, that authorizes the County Board to declare that a debt contracted by it is not a debt of the county, nor that authorizes the pledging of any specific fund to the discharge of any specific debt or obligation of the county.

The act levying the tax provides: "Said funds shall be used by the several counties of the State *exclusively for the construction, maintenance, supervision and policing* of the public roads and bridges in the respective counties." (Italics supplied.) Gen. Acts 1935, pp. 441, 512, § 348, Schedule 156.11.

This clause does not contemplate that the fund shall be used to pay interest on borrowed money or on debts contracted in such borrowing. If the county can pledge one-third, it can pledge all, and exhaust the funds to the detriment of the coming generation.

Nor is there anything in the proviso quoted in the opinion of the Chief Justice, in the Shelby County Case, from the General Revenue Laws of 1935, that authorizes county boards to pledge said fund to the payment of interest-bearing warrants payable over a period of years.

We quote the proviso here: "Provided, however, that the Board of Revenue or other such governing body of a county may direct the State Tax Commission to pay over to the State Highway Department such part of said funds as may be agreed upon by the Board of Revenue or such other governing body of any county, and the Governor of the State of Alabama, which said funds are to be used in the construction and maintenance of roads in said county, to be agreed upon by the Board of Revenue of such county, or such other governing body, and the Governor of the State of Alabama." Gen.Acts 1935, pp. 441, 514, § 348, Schedule 156.11.

This proviso authorizes the County Board, with the concurrence of the Governor, to direct the payment of designated portions of said fund to the State Highway Department, to be expended on roads in the county, but this is not a pledging to pay long term warrants nor an assignment to raise money through the process of loans, from private sources.

The suggestion is made that no reason exists why such County Board should not issue warrants with the limitation, set forth in the proposed bond, if purchasers, in the face of such limitation, are willing to take the chance of the Legislature continuing in force such tax until they get their money. It is a sufficient answer to such suggestion that the County Board is not authorized by the statute to incorporate such limitation, and, not being so authorized, its act in doing so is void. "County authorities can exercise only such powers as are delegated to them by the Legislature." Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850, 851; Mobile County v. Williams, Judge, 180 Ala. 639, 645, 61 So. 963.

Moreover, it allows public officials to enter into contract with people who are willing to gamble in respect to public funds, and as a general rule such persons do not usually give value for that which they receive. Such a debt tends to hamper the freedom of the Legislature to relieve the public from such tax, and lays the foundation for an argument to induce the representatives of the people to continue to levy such taxes to meet obligations accepted in a gambling spirit. Such is clearly contrary to public policy.

If public boards are allowed to pledge revenues for debts contracted and maturing over a long period of years on the mere hope that the Legislature will provide for the payment of the debt, we may well expect the opening of new fields of taxation, and new tax burdens to meet such debts. Such profligacy, in governmental affairs, should not be tolerated nor encouraged.

In Littlejohn v. Littlejohn, County Treasurer, 195 Ala. 614, 71 So. 448, this court held that counties could not issue interest-bearing warrants if such issuance increased the counties' debt beyond the limit prescribed by section 224 of the Constitution, and that such interest-bearing warrants were not negotiable so as to confer on the assignee the right to maintain an action thereon.

To my mind, the argument and conclusion of the majority that interest-bearing warrants to the amount of $275,000 is not a debt of the county is simply reductio ad absurdum, and utterly against the provisions of section 224 of the Constitution.

If a county can issue a half million or more of such warrants above the constitutional debt limit, then it can issue a million, and so ad infinitum. The result of the holding of the majority in this case and the Shelby County Case will give impetus to an orgy of spending by counties that

will make the record of the carpetbag rule during the Tragic Era insignificant in comparison, and will necessitate the increase of the levy on motor fuels, now 70 per cent of the original cost, to double or triple that amount, and I predict in the end the price will be prohibitive except to the very fortunate who are able to pay any price for the privilege of using the highways in the use of motor vehicles.

The erroneous holding in the Alabama Bridge Corporation Case has led the court into a departure from the mandate of the Constitution, and this to me seems regrettable.

For these reasons I am compelled to dissent.