164 So. 572

## In re OPINIONS OF THE JUSTICES.
### No. 34.

Supreme Court of Alabama.
Nov. 2, 1935.

Supplemental Opinion Nov. 12, 1935.

budgets plans for issuing and may issue, subject to the rules and regulations of the State Board of Education, and to the limitation set forth in (a) below, callable warrants bearing not over six per cent interest per annum for the erection, alteration, and equipment of school buildings, or other capital outlay purposes, said warrants to be issued against revenues to be derived from·school taxes available for such purposes as set forth in Section 13. (281) a. *Warrants Cannot be Issued when the Minimum Program of the Schools would be Jeopardized.*—No county or city board of education may issue warrants for capital outlay purposes when the issuance of such warrants would obligate funds needed to operate the schools in said county or city in accordance with the state minimum program as defined by regulations of the State Board of Education. In order that the minimum program may be properly safeguarded, the county or city boards of education through the county or city superintendents of education shall make application to the State Superintendent of Education on forms to be prescribed by him, giving the amount of warrants proposed to be issued, giving the amounts of principal and interest to be paid each year in retiring such warrants and showing that payments of principal and interest will be arranged to require approximately equal payments each year. The State Superintendent of Education may approve the proposed issue of warrants when it can be shown that no funds needed to carry on the minimum school program in that county or city will be obligated to pay principal or interest due on the proposed warrant issue, and shall not approve the proposed issue of warrants when it can be shown that funds will be obligated to retire those warrants which might be needed to carry on the minimum program of the schools in that county or city. No warrants for capital outlay purposes shall be issued by any county or city board of education except under conditions herein set forth and under the regulations of the State Board of Education, and with the approval of the State Superintendent of Education.

Section 11. *Warrants May be Issued to Pay Debts Created Prior to July 1, 1935.*— In order to pay debts not otherwise funded which were incurred for legitimate obligations prior to the first day of July, 1935, any county board of education or any city

Questions propounded by the Governor to the Justices of the Supreme Court, under Code 1923, § 10290.

Questions answered.

Sections 10, 11, and 13 of Gen. Acts 1935, pp. 731, 732, Sept. 2, are as follows:

Section 10. *Limitations on Issuance of Warrants against School Funds for Capital Outlay Purposes.* County and city boards of education may include in their

board of education may borrow money and as security therefor, or in payment of such loans, shall issue callable warrants or execute promissory notes bearing interest at a rate of not to exceed six per cent per annum, payable at such time as may be agreed upon; or may sell such warrants or notes at par and use the proceeds in the settlement of such debts. All warrants or notes so issued shall be payable out of such school funds of the county or city as may be available for such purposes. Payments of principal and interest on such warrants or certificates of indebtedness shall be arranged so as to require approximately equal payments each year over a period of not to exceed fifteen (15) years. When these outstanding debts have been funded in accordance with the provisions of this section, no other warrants may be issued or debts incurred, except in accordance with the provisions of this Act.

Section 13. *Warrants Preferred Claims: Penalty for Diversion of Funds.*—All warrants with interest thereon issued under the provisions of this act by county boards of education and city boards of education shall be signed in the name of the issuing board by its president and shall be preferred claims each year during the period for which the warrants are issued upon the proceeds of the tax levy upon which they are based. The county board of education shall, by resolution entered on its minutes, set apart for each year so much of the county tax income, or when the warrants are issued for the benefit of a school district, set apart for each year so much of the district tax income, as will be necessary to meet annual interest and principal payments on all warrants issued against such tax or taxes. In the event the proceeds arising from a district school tax levy in a district under the control of the county board of education are insufficient in any year to pay with interest maturing warrants issued against such tax levy, the board shall set apart from the special county three-mill school tax income a sum which with the district tax income, will be sufficient to pay such warrants with interest. The city board of education shall set aside annually funds sufficient to pay such warrants and interest as mature during that year. Funds set apart under the provisions of this section shall be used exclusively for the purpose for which they are set apart. Any person or officer who diverts or causes the diversion of such funds, or any part thereof, to any other purpose, shall be personally liable in the amount of such diversion, and his bond, if he be bonded, shall also be responsible in such amount together with the expense of recovering it. (283–286)

Section 7 of General Acts 1935, p. 1093, Sept. 13, is as follows:

Section 7. That section 281 of the Alabama School Code of 1927 be so amended as to read as follows: 281 *Warrants Sold and Taxes Pledged for Payment.*—In any county which has levied or is levying a special county tax for school purposes, the county board of education, in order to erect, repair, enlarge, or equip school buildings, or to make other improvements in the school facilities of the county, or to raise money for any of such purposes, may issue and sell school warrants bearing interest at a rate not to exceed six per centum per annum for an amount, including interest, not exceeding the income from said tax levy, estimating such income upon the basis of the assessed value of the taxable property in such county for the preceding tax year, as the annual return for such levy for the period for which such warrants are issued. Any county board of education shall have authority to use the proceeds from the local taxes or to issue warrants pledging the proceeds from such taxes for the purpose of taking over school buildings or of liquidating indebtedness on school buildings already erected by a municipality, the schools of which are under the jurisdiction of said county board of education; provided, that the county board of education and the authorities of the municipality in which the school building is located shall reach an agreement respecting the value and the price to be paid for the building, which agreement shall be entered in the minutes of both authorities; provided, further, that the municipality shall execute a warranty deed conveying to the State of Alabama all right, title, and interest in and to said property. The board of education of any county or of any city having a city board of education, in order to erect, repair, enlarge, or equip school buildings or to make improvements in the school facilities of any school district under its control in which a district school tax has been or is being levied, or to raise money for any of such purposes, may issue school warrants bearing interest at a rate not to exceed six per centum per annum for an amount, including interest, not to exceed the income from such tax levy, estimating such income

upon the basis of the assessed value of the taxable property in such city or school district for the preceding year, as the annual return from such levy for the period for which such warrants are issued.

Oct. 28, 1935.

To the Honorable Chief Justice and Associate Justices of the Supreme Court of Alabama:

Gentlemen: As Governor of Alabama, under the provisions of Sections 10290–10292, Code of Alabama 1901, as amended, I beg to request an advisory opinion on important Constitutional questions and statutory constructions relating to the issuance of county educational warrants or other evidences of debt under the provisions of Section 281 of the Alabama School Code as amended by Senate Bill 424 and as affected by the provisions of Senate Bill 351, which have become acts, the first approved September 13, 1935, and the latter approved September 2, 1935.

It is highly important to the school interests of the State of Alabama that the following questions be answered and I would thank you to consider the same and advise me.

1. Can county boards of education, without an election and without regard to the constitutional limit upon county indebtedness, issue school warrants pursuant to the authority conferred by the Alabama School Code, as amended, including Section 281 as amended by the act (S. 424) approved September 13, 1935, for any one or more of the purposes therein mentioned, without regard to the provisions and restrictions of the act (S. 351) approved September 2, 1935?

2. If the preceding question is answered in the negative, can county boards of education, without an election and without regard to the constitutional limit upon county indebtedness, issue school warrants pursuant to the authority conferred by Section 10 of the act (S. 351) approved September 2, 1935, for any one or more of the purposes therein mentioned, without regard to the provisions and restrictions of the Alabama School Code, as amended, relating to the issue of school warrants, including Section 281 as amended by the Act (S. 424) approved September 13, 1935?

3. If the two preceding questions are answered in the negative, can county board of education, without an election and without regard to the constitutional limit upon county indebtedness, issue school warrants pursuant to the authority conferred by and in accordance with the provisions and restrictions of Section 10 of the act (S. 351) approved September 2, 1935, and the provisions of the Alabama School Code, as amended, relating to the issue of school warrants, including Section 281 as amended by the act (S. 424) approved September 13, 1935, for any one or more of the purposes mentioned in both of the said sections?

4. If the answer to any of the preceding questions is in the affirmative, can such school warrants be made preferred claims upon the proceeds of the special 3-mill county school tax authorized by Article XIX of the Constitution, having priority over claims for salaries and other operating expenses and over any other claims except other similar warrants, and upon the proceeds of what other tax or taxes may any such warrants be made a preferred claim?

5. If any such warrants must meet the requirement of Section 10(a) of the act (S. 351) approved September 2, 1935, that no warrant shall be issued if the issuance of such warrant would obligate funds needed to operate the schools in accordance with the State minimum program as defined by regulation of the State Board of Education, is the approval of the issue of the warrants by the State Superintendent of Education as provided in said section conclusive and binding upon all persons in favor of the validity of the warrants that the said requirement has been complied with?

6. If any such warrants are required to be callable, may a premium be paid upon their call for payment before maturity and at what time or times and upon what kind of notice may such call privilege be exercised?

7. Can county boards of education, without an election and without regard to the constitutional limit upon county indebtedness, issue school warrants pursuant to the authority conferred by Section 11 of the act (S. 351) approved September 2, 1935, for the purposes therein mentioned, and can such warrants be made a preferred claim upon the proceeds of the special 3-mill county school tax authorized by Article XIX of the Constitution, having priority over claims for salaries and other operating expenses and over any other claims except other similar warrants, and

upon the proceeds of what other tax or taxes may such warrants be made a preferred claim?

8. If school warrants are issued pursuant to the authority conferred by Section 11 of the act (S. 351) approved September 2, 1935, are the original purchasers of the warrants from the county board of education, or the subsequent holders of the warrants, bound to inquire as to the validity of the indebtedness paid or to be paid from the proceeds of the warrants or may such purchasers and holders rely upon a recital in the proceedings of the county board of education authorizing the warrants or in the warrants themselves that the warrants were issued to pay debts not otherwise funded which were incurred for legitimate obligations prior to the 1st day of July 1935?

9. Can county boards of education, without an election and without regard to the constitutional limit upon county indebtedness, issue promissory notes or certificates of indebtedness pursuant to the authority conferred by Section 11 of the act (S. 351) approved September 2, 1935, for the purpose therein mentioned and if so who should be the promissor on such notes or certificates of indebtedness and what school funds of the county are available for their payment and could such notes or certificates of indebtedness be made a preferred claim against any school fund or school tax?

10. If school warrants or promissory notes or certificates of indebtedness shall be issued pursuant to the authority conferred by Section 11 of the act (S. 351) approved September 2, 1935, will the last sentence of that section then deprive the county board of education of any authority which it might otherwise have to issue school warrants under the Alabama School Code or confer upon the county board of education any authority which it otherwise might not have to issue warrants pursuant to the authority conferred by Section 10 of the said act?

11. If the answer to question 1, 2 or 3 is in the affirmative, can county boards of education issue district school warrants to be made preferred claims upon the proceeds of the special three-mill district school tax authorized by Article XIX of the Constitution, having priority over other claims for salaries and other operating expenses and over any other claim except other similar warrants and upon the proceeds of what other tax or taxes may any such warrants be made a preferred claim?

12. If such district warrants can be made a preferred claim upon the proceeds of the special 3-mill county school tax authorized by Article XIX of the Constitution to the extent to which such district 3-mill school tax is insufficient for the payment of the principal of and interest on such district school warrants as the same become due, and if county school warrants constituting a preferred claim against such county 3-mill school tax are outstanding, do the claims of such county and district school warrants against the county 3-mill school tax rank equally, and if not which takes priority?

13. If the answer to question 2 or 3 is in the affirmative, does Section 10 of the act (S. 351) approved September 2, 1935, require that the amount of school warrants issued by county boards of education maturing and interest to be paid each year in retiring such warrants shall be approximately equal?

14. If the answer to the preceding question is in the affirmative, must outstanding issues of warrants be considered in determining whether the principal and interest becoming due each year are approximately equal, and if so does the approximate equality provision apply as between all warrants issued against any tax income or only between warrants constituting a preferred claim against a particular tax such as the special 3-mill county school tax or the special 3-mill district school tax?

15. If the answer to question 13 is in the affirmative, is the approval of an issue of warrants by the State Superintendent of Education conclusive of compliance with the approximate equality provision of Section 10 of the act (S. 351) approved September 2, 1935?

Very respectfully,

Bibb Graves, Governor.

BG:T

Nov. 12th, 1935.

To the Honorables, the Chief Justice and the Associate Justices of the Supreme Court of Alabama:

Gentlemen: On account of the importance of the question to the School interests of the State and the limited time within which the matters under consideration must necessarily be closed, I presume to ask your further indulgence relative to an extension of your advisory opinion so

kindly rendered upon my previous request touching these same matters.

Would you kindly advise me, as Governor, in connection with inquiry No. 6, as set out in your advisory opinion, whether a County Board of Education may authorize the issuance of callable warrants, under the rules and regulations adopted by the State Board of Education touching these matters, and with the approval of the State Superintendent of Education, making the warrants callable on any anniversary of the date of the issuance of said warrants, with reasonable notice of the time and place of the call.

Yours respectfully,
Bibb Graves, Governor.

Honorable Bibb Graves, Governor of Alabama

Dear Sir: Replying to your inquiries of October 28, 1935, set out in the report of these opinions, we respectfully submit:

█ Inquiries Nos. 1, 2, and 3: School warrants for the erection or equipment of school buildings, issued pursuant to Senate Bill 351, approved September 2, 1935 [General Acts of 1935, page 728], and Senate Bill 424, approved September 13, 1935 [General Acts of 1935, page 1090], do not constitute county indebtedness within the meaning of section 224 of the Constitution, nor bonds within the meaning of section 222. Such warrants may, therefore, be issued without regard to the state of county indebtedness, and without a special election under section 222.

These questions were directly decided in construing the School Code of 1919, to like effect as the present statutes in this regard. Kimmons v. Jefferson County Board of Education et al., 204 Ala. 384, 85 So. 774. The case of Farned v. Bolding, Superintendent of Education, et al., 221 Ala. 217, 128 So. 435, holds nothing to the contrary. That case dealt with the construction of a statute, and notes a distinction between pledging future funds for current operating expenses and for capital outlays for school buildings, etc.

█ It should, however, be kept in mind, that the county three-mill school tax, and the district three-mill school tax are levied under and pursuant to Article 19 [Amendment No. 3] of the Constitution, which provides: "Section 1. * * * That the rate of such tax, the time it is to continue and the purpose thereof shall have been first submitted to the vote of the qualified electors of the county, and voted for by a majority of those voting at such election."

Such levies, made under this amendment, and enabling acts to carry it into effect, cannot, therefore, be diverted from the purposes named at the time they are voted on by the people. The Constitution would inhibit subsequent legislation devoting the funds voted for a specified purpose (not for public school purposes generally) to another and distinct purpose.

█ Further replying to inquiries 1, 2, and 3, we are of opinion warrants should be issued in pursuance of provisions of both said statutes, as per inquiry No. 3, and not under either in disregard of the restrictions of the other as per inquiries 1 and 2.

█ The rule that repeal by implication is not favored is accentuated in construing statutes passed at the same session, and being considered at the same time by the legislative body.

█ The School Budget Act [Senate Bill 351] for counties and cities has a broad purpose looking to maintenance of minimum terms of school, avoidance of accumulated deficits, for running expenses.

The pledging of three-mill tax funds for capital outlays is to be considered in connection with this sound policy referred to in Farned v. Bolding, Superintendent of Education, et al., supra.

The later act [Senate Bill 424] amends section 281 of the School Code. Nothing therein shows the lawmakers had in view a repeal or modification of the Budget Act, or subdivision (a) thereof, otherwise noted as (281a).

The two statutes should be construed together and the later statute held to modify the former only where the two are in direct conflict, if such there be.

█ Inquiries 4 and 5: Such warrants may be made preferred claims upon such revenue, if and when it is derived; and create no obligation and confer no authority to pay except in that designated manner. When the warrants are thus issued, it is only after the state superintendent has approved them and thereby found that the funds are not needed for the minimum program. We think such finding and approval are conclusive of that fact, and thereby the warrants take precedence, in respect to the special tax funds over claims for salaries and other operating expenses for each school year while the war-

158

rants are effective for that year. The further provisions for modification of the budget from time to time are subordinate to the vested rights of the holders of warrants so issued.

■ Inquiry 6: The act of September 2d provides that the warrants must be callable, and that they shall not bear more interest than 6 per cent. per annum. So that if the warrants bear interest at exactly 6 per cent. per annum, a provision in the warrants for a premium on call or for other purpose would be prohibited and void. 66 Corpus Juris, p. 200, § 114. .

The authority to issue "callable" warrants implies authority to stipulate therein the time or times of such calls, and the notice to be given of such calls, in absence of statutory provisions relating to same.

[All the Justices concur in the above conclusion, but, in respect to inquiry No. 6, there is a difference of opinion, in that Justices GARDNER, THOMAS, BOULDIN and BROWN are of the opinion that no premium could be paid no matter what the rate of interest. The term "callable" should be taken in its ordinary sense, an option to pay before maturity on call. Justices FOSTER and KNIGHT are of the opinion that if the warrants bear interest at a rate less than 6 per centum per annum, a valid provision may be made in them for a premium on call, provided the amount of premium, together with the stipulated interest to date of payment, does not in the aggregate exceed an amount equal to 6 per centum per annum to that date.]

■ Inquiry 7: Section 11 of the Act of September 2, 1935 [Senate Bill 351], looks to a funding of indebtedness accumulated in the past. It makes no provision for pledging future proceeds of three-mill tax levy or other funds, but they are to be paid from year to year out of funds then "available for such purpose." On the reasoning of Farned v. Bolding, Superintendent of Education, et al., supra, we answer this inquiry in the negative. Unless such three-mill tax is voted to pay past indebtedness, it would not seem subject to pledge for future years.

■ Inquiries 8, 9, and 10: If such warrants are so issued contrary to that principle, though within the apparent au-

thority of section 11, all holders of such warrants would be bound to know that they are not legally authorized. So we answer inquiry No. 8 in the affirmative.

■ For the reasons stated, we answer inquiries 9 and 10 in the negative.

■ Inquiries 11 and 12: A proper construction of the act of September 2d, as well as that of September 13th, is that the county board may act for a rural school district, and the city board for such a district within its limits so as to authorize them each, respectively, to issue warrants payable out of such special three-mill tax for such district. The county tax is for the county as a whole, and each district tax, including cities as districts, for such districts respectively and separately.

■ While the county board may issue county warrants payable out of the county millage tax, and expend the proceeds upon any school in the county in their discretion, when they issue district warrants, we do not think the warrants may be chargeable to the county millage tax, so as thereby to prohibit the county board from otherwise appropriating the county tax as it may be authorized by law. The district warrants can therefore be made preferred claims only on the district millage tax. So that we answer inquiry No. 12 in the negative, and further state that the district warrants have no preference in respect to the county millage tax.

■ Inquiry 13: The act seems to contemplate that the amount due to be paid annually shall be approximately the same. The warrants shall each respectively be a preferred claim on the millage tax for the year in which it is payable; that no warrant shall be made payable after the period fixed for the millage tax is to extend, controlled by the status existing at the time the warrant is issued. We answer inquiry No. 13 in the affirmative.

■ Inquiries 14 and 15: Same.
Respectfully submitted,
LUCIEN D. GARDNER
WM. H. THOMAS
VIRGIL BOULDIN
JOEL B. BROWN
ARTHUR B. FOSTER
THOMAS E. KNIGHT
Associate Justices

### Supplemental Opinion.

Hon. Bibb Graves, Governor of Alabama.

Dear Sir: Replying to your inquiry of November 12, 1935, set out in the report of this opinion, we respectfully submit the following:

Your inquiry relates to a matter of amplification of our response to inquiry No. 6 of our former advisory opinion to your inquiry of October 28, 1935, and we answer your present inquiry in the affirmative. And to be more specific, we express our opinion that a county board of education may authorize the issuance of callable warrants, under the rules and regulations adopted by the state board of education touching these matters, and with the approval of the state superintendent of education, making the warrants callable on any anniversary date of the issuance of said warrants, with reasonable notice of the time and place of the call. Such, indeed, was the meaning and effect of our former response to inquiry No. 6, and which we now make more specific and definite.

Respectfully submitted,

LUCIEN D. GARDNER
WILLIAM H. THOMAS
VIRGIL BOULDIN
JOEL B. BROWN
ARTHUR B. FOSTER
THOMAS E. KNIGHT
Associate Justices.