75 P.2d 712

## WHITE v. BOARD OF EDUCATION OF SILVER CITY.

No. 4354.

°Supreme Court of New Mexico.

Jan. 24, 1938.

Hubert O. Robertson and Alvan N. White, both of Silver City, for appellant.

J. F. Woodbury, of Silver City, for appellee.

SADLER, Justice.

The plaintiff, as a qualified elector and the owner of real and personal property in the municipal school district of the town of Silver City (known as School District No. 1 in Grant County) filed suit in the district court of said county against the Board of Education of the town of Silver City as the governing body of said school district to enjoin a proposed bond issue for the construction of two buildings for school purposes. One of the buildings is to be

used for a high school and the other as a grade school. The defendant demurred upon various grounds to be mentioned later, and the demurrer was sustained. The plaintiff stood upon the ruling on the demurrer and her complaint was dismissed. This appeal followed.

In initiating proceedings for the bond election which resulted favorably to the proposed issue, the defendant school district invoked the benefit of Laws 1937, c. 36. The title to this act sufficiently explains its general purposes. It reads: "An Act Authorizing School Districts in Which Are Located State Educational Institutions Which Conduct High Schools, to Vote Upon, Issue and Sell School District Bonds for the Purpose of Joining With Such State Educational Institution in the Erecting and Furnishing of High School Buildings or Purchasing Ground for the Same; Providing for Contributions by Counties to State Educational Institutions So Conducting High Schools for the Maintenance Thereof; Contributions to Such School Districts So Issuing Bonds by Other School Districts of Such County Having Students Attending Such High School; and Declaring an Emergency."

It appears from the complaint that the defendant proposes, under authority of said act, to join with New Mexico Normal School at Silver City, confirmed by Const. art. 12, § 11, as a state educational institution (hereinafter called state school), in the erection and furnishing of the high school building and the purchase of ground for the same.

Chapter 36 of New Mexico Session Laws of 1937 authorizes any school district within which is located a state school, conducting a high school as a part thereof under control of its governing body, to vote, issue, and sell district school bonds "for the purpose of joining with such State Educational Institution in erecting and furnishing of·high school buildings or the purchasing of school grounds therefor." Laws 1937, c. 36, § 1.

The statutory proceedings for the issuance of other school district bonds are made applicable to the election and the issuance and sale of bonds authorized by the act. Laws 1937, c. 36, § 2. Funds realized from the sale of any such bonds must be turned over to the governing body of the state school and shall be used by said governing body "only for the purpose for which the same [bonds] were voted, issued and sold, * * * and shall only be expended for such purposes upon the approval of the governing body of such school district." Laws 1937, c. 36, § 3.

Title to the building and to the land on which it is erected and control and management of the high school are vested in the governing body of the state school by section 4 of the act.

Section 5 to 8, both inclusive, read as follows:

Section 5. Any State Educational Institution accepting funds realized from the

sale of such school district bonds shall at all times accept, for instruction in the high school operated by it, all students having proper qualifications, residing within said school district, and no student residing in such school district, having the proper qualifications, shall be refused admittance to or instruction in such high school, but such State Educational Institution so conducting such high school shall at all times have the right to promulgate and enforce reasonable rules and regulations for the conduct of all students attending such high school.

"Section 6. In the event any such State Educational Institution accepting funds from any such school district, which have been used in whole or in part for the erecting or furnishing of high school buildings or for the purchasing of lands therefor, shall abandon or cease to conduct a high school, then such buildings and furnishings, together with sufficient land surrounding said buildings for school purposes, shall by the governing body of such State Educational Institution be immediately transferred and conveyed to such school district.

"Section 7. The County Board of Education of any county in which a State Educational Institution accepting funds from any such school district is located shall, upon the request of the governing body of such State Educational Institution, include in its budget, for the maintenance and expenses of such high school, such allowances as may be found necessary to provide for the instructional and other school maintenance expenses incurred on account of high school students residing in the county, who are attending such institution, provided that the term 'high school' shall apply to courses above the eight elementary school grades and of a strictly secondary school standard, and that the amount of such expense to be provided for shall be determined upon the basis of an allowance of not to exceed Ninety ($90.00) Dollars per year for each of such high school students in average daily attendance at such institution during the preceding year. In making the distribution of the proceeds of the county school maintenance fund, the County Treasurer shall determine the ratio of the amount allowed such institution to the total of the school budget estimates, as approved by the Board of Budget Commissioners, and shall from time to time, as funds are available, make distribution to such institution of its proportionate share of all receipts credited for distribution to the school maintenance fund. No allowance, however, shall be made for purposes other than such as are included under school maintenance estimates.

"For the first year of the operation of any such high school, the maintenance expense shall be provided as hereinabove specified and shall be determined upon the basis of the number of high school students in average daily attendance during the preceding school year in the State Educational Institution accepting funds from such school district.

"Section 8. The only direct charges against any such district shall be for interest upon and sinking funds for such bonds as are issued by such school district for such purposes, and no tax levies shall be made against such school district for any other direct charges. In the event any students shall attend such high school from any other school district of the county than the school district so issuing said bonds, such school district from which such student shall attend shall budget for and as a part of its direct charge fund for each student so attending such high school an amount equal to the direct charge per capita of the school district so issuing such bonds, which direct charge so budgeted shall be paid by said school district from which such student attends to the school district so issuing such bonds."

The bond election was called and conducted under the provisions of article 7, chapter 120, New Mexico Statutes Annotated 1929. Section 120-701, among other things, provides: "All bond issues in an amount over $10,000.00 shall be issued in serial form, to run for not less than five years, nor more than twenty years, and shall be payable in consecutive order in substantially equal annual installments, commencing the fifth year from date of issue."

The district court was asked to invalidate the proceedings and enjoin issuance and sales of the bonds upon the following grounds:

(1) That the petition, notice, and ballots employed in said election submitted two separate propositions as a single question.

(2) That the maturities of the bonds are fixed in unequal annual installments contrary to the requirements of section 120-701, quoted supra.

(3) That the proposal to turn over $62,-500 of the proceeds of the bond issue to the state school for construction of a joint high school violates Const. art. 9, § 14, in that the school district thereby "pledges its credit" in aid of a "public corporation."

(4) That Const. art. 9, § 11, is offended in the proposed issue, in that it is within its prohibition that no school district shall borrow money for erecting a school building as to which title and management are not in the district.

(5) That the proposed issue will violate the provisions of Const. art. 8, § 1, enjoining equality and uniformity in taxation.

The first challenge to validity of the proposed issue is that the petition, notice, and ballots contain a dual proposal submitted to the voters as a single question. The duality in the proposal is said to inhere in the fact that $62,500 of the proposed issue is to be employed in erecting a high school building in conjunction with the state school, and $37,500 in the erection of a grade school; that a given voter might favor the high school proposed yet oppose the borrowing of money for construction of the grade school; yet

his vote would depend upon which consideration weighed the more heavily in his mind; namely, favor for the high school or opposition to the grade school.

Lanigan v. Gallup, 17 N.M. 627, 131 P. 997, is relied upon by plaintiff as authority in support of this claim of error. In that case we held, as indicated by the fifth paragraph of the syllabus, as follows: "Cities, towns, and villages are not authorized to submit to the voters of such municipality the joint proposition of issuing bonds for the double purpose of constructing a waterworks system and building a system of sewers, without providing for a separate vote upon each question."

The opinion in the Lanigan Case discloses main reliance upon the reasoning of Stern v. Fargo, 18 N.D. 289, 122 N.W. 403, 26 L.R.A.,N.S., 665. The defendant argues that two buildings to be constructed on the plan proposed in the proceedings form inseparable parts of a related whole and thus are outside both the reason and the precedents of the rule invoked. We are reminded that in City of Albuquerque v. Water Supply Company, 24 N.M. 368, 174 P. 217, 5 A.L.R. 519, we held a proposed bond issue for the purchase *or* erection of a system of waterworks did not present a double proposition within the rule. Likewise, it is pointed out that in Dickinson v. Board of Commissioners of De Baca County, 34 N.M. 337, 281 P. 33, we did not consider that joint submission of a bond issue for a courthouse and jail would fall

within the interdiction of the rule announced in Lanigan v. Gallup, supra.

For authority in support of its contention that the issue as presented is not "double" within the rule invoked by plaintiff, the defendant cites 56 C.J. 603, § 715, "schools and School Districts"; case notes at 26 L.R.A.,N.S., 665 and 5 A.L.R. 538; Howard v. Independent School District No. 1 of Nez Perce County, 17 Idaho 537, 106 P. 692; King v. Independent School District, 46 Idaho 800, 272 P. 507; Clark v. City of Manhattan Beach, 175 Cal. 637, 166 P. 806, 1 A.L.R. 1532; Clark v. City of Los Angeles, 160 Cal. 317, 116 P. 966. See, also, Parks v. School District No. 1, 22 Ariz. 18, 193 P. 838.

As is to be noted from the authorities cited, there is much conflict upon the question whether a given statement of the object of a bond issue, as shown in the notice and ballot, represents merely related details of a single scheme or involves dual proposals in the prohibited sense. We have no hesitancy in saying that the construction of a high school building and a grade school building from proceeds of one bond issue with the amount to be allocated to each stated in the proceedings presents but a single proposal. The separate question, if it be such, involved in the proposal is whether the voters of the school district, as a matter of policy, prefer a high school under control and management of a board *elected* by them, or, by reason of superior advantages otherwise apparent, are willing to waive

this prerogative of local self-government by joining with the state school in the construction of a high school to be under control and management of a board *appointed* by the Governor.

██ We are spared the necessity of deciding the issue presented in the case before us. We even may concede a dual proposal and yet must hold the plaintiff without right at this time to raise the question. As previously mentioned, the bond election was called and conducted under the provisions of article 7 of chapter 120, Comp.1929. Sections 120-711 and 120-712 provide:

"120-711. Any time prior to five days preceding the day set for an election, *but not afterwards,* any person or corporation may attack the validity of the petition asking for the election or the resolution approving said petition, or both, by action in the district court of the county of the district affected and the court shall have power to require appearance and answer therein in such time as it shall elect All such cases shall take precedence over all other court business." (Italics supplied.)

"120-712. Any person or corporation may institute in the district court of the county of the district affected an action or suit to contest the validity of all proceedings taken subsequent to those mentioned in the last preceding section, *but no such suit or action shall be maintained unless the same be instituted within ten days after the publication of the certificate* specified in section 709 (120-709) hereof." (Italics supplied.)

In White v. Curry County Board of Education, 36 N.M. 177, 10 P.2d 590, 591, section 120-711 was construed as a statute of limitation barring an attack upon the petition for a defect otherwise likely fatal. Among other things, we said:

"We consider this section a statute of limitations. The bond sections of the School Code (Comp.St.1929, § 120-701 et seq.) disclose a purpose to have the validity of the proceedings settled before bonds shall be issued, and disclose also the necessity of prompt action at every stage to meet the time limits set. Fisherdick v. San Juan County Board of Education, 30 N.M. 454, 236 P. 743. This section (120-711) gives taxpayers not less than twenty-five days after the adoption of the resolution, and not less than ten days after its publication, within which to launch their attack. While this section is couched in different language than section 120-712, limiting suits after the election, we think the two sections are of the same nature and have like effect. The latter section is quite similar to 1929 Comp.St. § 90-1214, which we recently held to be a statute of limitations, remarking that: 'Short periods of limitations on the right to attack proceedings such as these are present almost invariably in legislation of this kind.' Oliver v. Board of Trustees, 35 N.M. [477], 1 P. 2d 116, 118.

"The present attack, if launched in time, would perhaps have been fatal. Dickin-

son v. Board of Commissioners, 34 N.M. 337, 281 P. 33. But we see no reason for holding that the Legislature could not limit the action as it has." ·

See, also, to same effect, Griggs v. Board of Com'rs of Colfax County, 39 N.M. 102, 41 P.2d 277.

The complaint alleged that the vote at the election had been duly canvassed and certified in conformity with section 120-709. It also appears from recitals therein that a copy of the certificate had been published as provided by section 120-710. The election was held May 25, 1937. Plaintiff's action was instituted on December 4, 1937. One ground of the demurrer is that plaintiff's action is barred by sections 120-711 and 120-712 of the School Code. The contention is here renewed in connection with this ground of attack upon the validity of the proceedings.

We conclude the plaintiff is foreclosed by limitations from questioning validity of the proposed bond issue upon the ground that petition, notice, and ballot submit a double proposal. The objection points out no constitutional defect in the proceedings and, if valid, should have been urged within the time limited by the statute. 51 C. J. 617; Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280, 282. Cf. Lyon Lumber Co. v. Livingston Parish School Board, 5 Cir., 286 F. 114.

The Supreme Court of Louisiana in the Roberts Case, construing a limitation provision in the Constitution, held it applied to attacks upon the validity of the tax to support a school bond issue "even when the *constitutionality* of the tax was involved." Previously, the court had held both ways on the proposition under statutory language of similar import. We do not have to go so far in disposing of the present objection as did the Louisiana court. The objection does not present a constitutional question.

■ The plaintiff next assails validity of the proceedings upon the ground that the bonds are not made payable "in substantially equal annual installments" as required by section 120-701. It appears that if the principal alone of bonds maturing each year be considered they are not made payable in substantially equal annual installments, the yearly maturities ranging from $3,000 to $7,000 over the entire period. If the interest maturing each year be added to the principal, the annual payments more nearly approximate equal installments, fluctuating between $7,397.50 and $6,422.50. It is argued by defendant, first, that the provision requiring payment in substantially equal annual installments is repealed by omission from Laws 1929, c. 201, "An Act Relating to Bonds Issued by Counties, Cities, Towns, Villages and School Districts and Repealing All Acts and Parts of Acts in Conflict Therewith." It is also said that if this provision be deemed in force its requirement is fully met by substantial equality of payments, if principal and interest are both included.

There is no express repeal contained in Laws 1929, c. 201. If repealed, it is repealed by implication, and such repeals are not favored. The equality of payment provision in section 120-701 is entirely consistent with the 1929 act and, considering its wholesome purpose of assuring repayment of the debt by the generation creating it (State ex rel. Tacoma v. Clausen, 126 Wash. 90, 96, 217 P. 712, 713), we should be loath to declare a repeal if we felt called upon to decide the question. Whether this provision, if in force, relates to principal only of the bonds, or principal and interest, presents an interesting question. If the Legislature had intended that interest should enter the equation it would have removed doubt on the subject by using language better calculated to express such intention. The language employed in the Washington statute, Laws 1923, p. 488, § 1, to express the intention which defendant reads from ours is quoted in State v. Clausen, supra, as follows: "The various annual maturities shall commence with the second year after the date of issue of such bonds and shall (as nearly as practicable) be in such amounts as will, together with the interest on all outstanding bonds, be met by an equal annual tax levy for the payment of said bonds and interest."

See, also, In re Opinions of the Justices, 231 Ala. 152, 164 So. 572, 573, for the language of an Alabama statute, Gen.Acts 1935, p. 731, § 10, providing for "approximately equal payments each year" of principal and interest. The statute is again construed in Re Opinions of the Justices, 231 Ala. 347, 165 So. 100. In Moore v. West School District of Holmes County, 141 Miss. 537, 106 So. 750, a statute interpreted as applying only to principal payments reads as follows: "All bonds issued under the authority of this act shall be serial bonds maturing annually with all maturities not longer than twenty-five years * * * and not less than one-twenty-fifth of the said total issue to mature annually during the succeeding ten year period of the life of said bonds and the remainder to be divided into approximately equal payments." Laws 1924, c. 283, § 186, subd. 22.

■ We think the question is now foreclosed, along with the one first discussed, through failure to institute an action challenging the proceedings on this ground within the time limited by section 120-712. White v. Curry County Board of Education, supra, and Griggs v. Board of Com'rs of Colfax County, supra. These limitation provisions either have some meaning or they have not. They appear as integral parts of the School Code governing the issuance of bonds by school districts. In Oliver v. Board of Trustees of Town of Alamogordo, 35 N.M. 477, 1 P.2d 116, 118, we quoted approvingly a statement from the opinion of the Supreme Court of Oklahoma in Edmonds v. Town of Haskell, 121 Okl. 18, 247 P. 15, concerning the purpose of a similar statute, as follows: "This statute has a twofold purpose, and a two-

fold effect, viz.: That of stabilizing and maintaining the credit of a town in the commercial world, and thereby benefitting property owners by maintaining a sound credit for their town, and on the other hand it carries assurance to contractors and investors in town securities that the legal obligations of the town must be met."

We do not hold that *all* questions touching the validity of bonds issued pursuant to article 7 of chapter 120, Comp.1929, are foreclosed by the limitation provisions of sections 120-711 and 120-712 thereof. We should be reluctant to deem them more effective as a bar than a decree in the familiar statutory suit to validate a bond issue. We do not presume even to say they are equally effective. Our views upon questions not foreclosed either by limitations or a validation proceeding are well expressed in the case of Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, 254. The suit was one to enjoin the issuance of school bonds because their maturities had been fixed contrary to a constitutional requirement touching the subject. The answer set up the decree in a statutory suit validating the bonds. The statute, Rev.Gen.St.Fla.1920, § 3299, provided that when a decree validating bonds had been rendered and no appeal taken therefrom within twenty days, or, in case of appeal, when such decree was affirmed by the Supreme Court, such decree "shall be forever conclusive as to the validity of said bonds * * * against the * * * taxing district, * * *

issuing them, and against all taxpayers and citizens thereof; and the validity of said bonds * * * shall never be called in question in any court in this state."

The plaintiff was not a party to the validation proceeding, though he might have become so at his election. Nor was the constitutional question raised in plaintiff's suit presented by the pleadings in the validation proceeding. The plaintiff's suit was held not barred. The court said: "Any matter or thing affecting the power or authority of the several political subdivisions mentioned in section 3296, Rev.Gen. Stats.1920, to issue bonds, or the regularity or legality of their issue, including questions of both law and fact, in so far as those matters or things could be lawfully prescribed, regulated, limited, or dispensed with by the Legislature in the first instance, or subsequently cured by a validating act, may be put in repose by a decree rendered pursuant to section 3296 et seq., Rev.Gen.Stats.1920. So, also, may constitutional rights or privileges which are designed solely for the protection of the property rights of the individual concerned, and which he may waive, or with reference to which he may estop himself, or as to which the Legislature may lawfully limit the period of time within which they may be exercised. Such an adjudication of the several matters just referred to is forever conclusive upon the persons and political subdivisions mentioned in section 3296 et seq., and all such persons and bodies are thereafter forever barred from again rais-

ing those questions with respect to the bonds as to which the adjudication was made. In other words, any defect or irregularity which may be waived or to which an estoppel may apply, and which does not render the proceeding a nullity and therefore void ab initio and incapable of subsequent legislative ratification or validation, may be adjudicated in the validation proceeding under the statute, and if such defects or irregularities are not raised in that proceeding they are forever and conclusively settled with respect to the bonds therein involved. But if, as is the case here, the resolution upon which the proposed bonds are based is a nullity because it purports to prescribe maturities for the bonds under consideration contrary to the express command of the Constitution, the bonds to be issued pursuant thereto are not merely irregular or voidable (and therefore susceptible of ratification or validation), but such bonds are void ab initio and are therefore incapable of legislative validation. An affected taxpayer, who is otherwise entitled so to do, but who did not intervene and object to such bonds in a statutory validation proceeding, is not thereby barred from subsequently asserting against the issuance of such bonds the mandatory and continuing command of the Constitution prohibiting the issuance thereof."

No one will seriously question the power of our Legislature to have authorized in the first instance the issuance of bonds maturing in amounts as disclosed by the proceedings before us. If it could originally have so authorized, no constitutional barrier is overridden in giving to the statutory limitations enacted the effect declared.

We see in the proposed issue no violation of article 9, section 14 of the Constitution. So far as material, it provides: "Neither the state, nor any county, school district, or municipality, except as otherwise provided in this constitution, shall directly or indirectly lend or pledge its credit, or make any donation to or in aid of any person, association or public or private corporation, or in aid of any private enterprise for the construction of any railroad," etc.

The claimed violation is said to be a pledge of its credit by defendant in aid of the state school, visualized as a "public corporation." At oral argument plaintiff's counsel disclaimed the contention that defendant's proposed use of the proceeds of the bond sale will amount to a "gift" or "donation." Plainly it is neither. Just as obviously it is not a pledge of credit.

The state school is a state institution so established by the Constitution for educational purposes. The defendant school district in joining with it to construct a high school building receives many advantages. The state school, as required by Laws 1937, c. 36, § 5, must "at all times accept, for instruction in the high school operated by it, all students having proper qualifications, residing within said school district, *and no student residing in*

*such school district, having the proper qualifications, shall be refused admittance to or instruction in such high school,"* etc. (Italics supplied.)

Furthermore, as shown by section 8, the only direct charges which may be made or levied against the defendant school district on account of the high school so constructed and maintained shall be for interest and sinking funds for the bonds issued for such purpose. Thus, direct charges otherwise applicable on account of the high school, as shown by Laws 1937, c. 29, § 2, amending Laws 1935, c. 98, § 2, such as property insurance, repairs to the building and equipment, new equipment, improvement of grounds and building, are escaped altogether. Without wishing to efface from the picture the glow of altruism with which plaintiff's argument surrounds defendant in thus pledging its credit "in aid of" the state school, we think the defendant was actuated by a spirit of self-interest in the matter, and that under the plan outlined in the statute it will get value received for every dollar put into the enterprise.

We have had occasion in two cases only to construe article 9, section 14, of the Constitution. Those cases are Harrington v. Atteberry, 21 N.M. 50, 153 P. 1041, 1048, 1050 and In re Gibson, 35 N.M. 550, 4 P. 2d 643. The object of this constitutional provision as deduced from the opinion of Mr. Chief Justice Roberts and the cases referred to and quoted by him in the Harrington Case demonstrates that the arrangement between the state school and defendant school district for construction of a high school for joint use of both from moneys to be advanced by each is not one of the evils aimed at. Indeed, a majority of the court in the Harrington Case were unwilling to accept the conclusion of the Chief Justice that the appropriation involved was a "donation." They were able to concur in the result announced by him only because they considered the transaction a violation of Const. art. 4, § 31.

The Supreme Court of California in City of Sacramento v. Adams, 171 Cal. 458, 153 P. 908, 910, held that section 31 of article 4 of the State Constitution prohibiting the giving or lending of the credit of any county, city, or political subdivision "in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof," etc., and further prohibiting the Legislature from making a gift or authorizing the making of any gift "of any public money or thing of value to any individual, municipal, or other corporation whatever," did not operate as contended by respondent there and by plaintiff here. The court said: "We are satisfied that this cannot be construed as applicable to the giving or lending of the credit of one of the agencies of the state or the making of any gift by one of such agencies, to the state itself. The state is not a corporation within the meaning of this section. This was squarely held of a substantially similar provision of the Constitution of the state of Washington in

Lancey v. King County, 15 Wash. 9, 45 P. 645, 34 L.R.A. 817. See, also, Walker v. Cincinnati, 21 Ohio St. 14, 8 Am.Rep. 24. It is to be borne in mind that the state itself has absolute control of all the property of such of its agencies as cities, towns, counties—is, in a sense, the ultimate owner thereof."

See, also, McNichols v. City of Denver, Colo., 74 P.2d 99.

In the opinion of Mr. Chief Justice Roberts in Harrington v. Atteberry, supra, he said: "In Elting v. Hickman (1903) 172 Mo. 237, 72 S.W. 700, the court held that an appropriation to a special road district, which was created by a city under the provisions of a general law permitting the creation of special road districts not more than six miles square, was not unconstitutional as granting money to a corporation, association or individual. The holding is clearly correct, for the road district was a subordinate governmental agency, and therefore did not come within the meaning of the constitutional prohibition."

■ There is no merit in the contention that Const. art. 9, § 11, is violated in that title to the high school building will not be in the school district. The pertinent portion of the provision in question reads: "No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds."

Plaintiff's counsel assert that this provision of the Constitution "necessarily means that the school district must purchase the ground itself, take the title thereto and erect the building upon its own." Of course, the broad purpose of acquisition and ownership by the district is to assure housing and facilities for conducting the free public schools of the state. As to students of high school age in defendant school district, that purpose is fully served by the arrangement disclosed. While title to the building and land is vested in the state school by Laws 1937, c. 36, § 4, the school district shares with it the full equitable ownership. In addition, as provided by section 6, if the state school shall ever "abandon or cease to conduct a high school, then such buildings and furnishings, together with sufficient land surrounding said buildings for school purposes, shall by the governing body of such State Educational Institution *be immediately transferred and conveyed to such school district.*" (Italics supplied.) Neither the spirit nor the letter of the constitutional provision invoked is violated.

■ Finally, it is urged upon us that taxes levied to meet principal and interest of the proposed bond issue will not be equal and uniform within the requirement of Const. art. 8, § 1. Plaintiff's theory of inequality is disclosed by a statement from her brief as follows: "In the instant case it is seen that the proposed high school is largely for the benefit of the New Mexico

Normal School at Silver City, being a facility for improving its educational training system. The project is also for the benefit of all high school students of the County, who are eligible to attend. The benefit to the Silver City school district is a very minor part of the project, but the taxpayers of the district alone have the primary burden of paying the bonds."

We do not consider that the proposed high school is largely for the benefit of the state school or that benefit to Silver City school district is a minor part of the project. A reading of Laws 1937, c. 36, and consideration of the benefits obtaining in favor of the school district strongly persuade us to the contrary. These special benefits, as well as others incident to the plan, accruing to the taxpayers of defendant school district, equalize and render uniform the tax as between taxpayers of such district and others throughout the county. There is no contention that the tax is not equal and uniform throughout the district. See Borrowdale v. Board of Commissioners of Socorro County, 23 N.M. 1, 163 P. 721, L.R.A.1917E, 456; Turner v. City of Hattiesburg, 98 Miss. 337, 53 So. 681; Lund v. Chippewa County, 93 Wis. 640, 67 N.W. 927, 34 L.R.A. 131.

Finding no error, the judgment of the district court is affirmed.

It is so ordered.

HUDSPETH, C. J., and BICKLEY, BRICE, and ZINN, JJ., concur.