## JOSIAH D. BACON v. COUNTY OF DAWES.

FILED NOVEMBER 6, 1902.    No. 11,334.

1. **Levy:** TAX: TRANSFER: COLLECTION. Levies made for other funds can not be transferred by the county board to the general fund before the tax so levied has been collected.

2. **Warrants:** GENERAL FUND: LEVY: EXCESS. Warrants drawn upon the general fund of the county, in excess of 85 per cent. of the levy for that fund, and where there is no money in the treasury belonging to that fund, are void.

3. **Action on Warrant.** No right of action accrues upon county warrants until there is money for their payment in the fund upon which they are drawn, or the proper authorities have had opportunity to provide funds to pay them, and have neglected to do so.

ERROR from the district court for Dawes county. Action upon several county warrants. Defenses excessive levy and statute of limitations. Trial to court, HOLLENBECK, J. Judgment for defendant. *Reversed.*

*Albert W. Crites,* for plaintiff in error.

*W. H. Fanning, contra.*

SEDGWICK, J.

This action was begun in the district court for Dawes county. The petition alleges several causes of action on as many different county warrants of that county. As a defense to some of the warrants, it was alleged that they were ordered drawn and issued without authority, because in excess of 85 per cent. of the levy; and as to other of the warrants the defense was the statute of limitations. The action was tried to the court without a jury, and both of the said defenses were sustained, and judgment entered accordingly. The plaintiff has brought the case here upon petition in error.

1. After the warrants had been drawn against the levies for the bridge, road and insane funds for the year 1893, sufficient to pay all claims against those funds, no other expenditure chargeable to those funds being necessary, in the judgment of the county board, and the levies for those funds for that year not being exhausted, the county board ordered the remainder of the levies transferred to the general fund. No warrant has since been allowed upon the funds for which the said levies were originally made. At that time practically none of the taxes levied for those funds had been collected, and the warrants that had been drawn against them were then outstanding. The

amount so ordered transferred to the general fund was added to the amount originally levied for that fund, and the whole amount indorsed on the warrants in controversy as the amount of the levy for the general fund for the year 1893. These warrants were issued in 1894. Afterwards, and up to the time of the trial of this action, which was in the fall of 1899, the taxes collected upon these transferred levies were, by order of the county board, placed in a fund denominated by them "transfer fund,— or cash in the hands of the treasurer," and warrants drawn in 1898 and 1899 have been paid out of this fund. The statute (sec. 4, art. 3, ch. 18, Compiled Statutes, 1901*) provides "that the board of county commissioners of the several counties of the state may appropriate to the county general fund any county sinking fund in the county treasury not levied for the payment of any bonded indebtedness; also any county moneys from whatever source, excepting the moneys levied for school purposes, that remain on hand in the county treasury, and are no longer required for the purposes for which the same were levied." The law limits the amount that may be levied for the general fund, and an excessive levy for any fund, made for the purpose of transferring the excess to the general fund, would clearly be illegal, as an attempt to evade this restriction. The power, therefore, to make such transfer may become a dangerous one. It can be exercised only in the manner and within the limits prescribed by the statute. It sometimes happens that a levy for a special fund, made in good faith, from careful estimates, will provide more money than is afterwards necessary and actually used for the purpose for which it is levied. When such moneys "remain on hand and are no longer required for the purposes for which they were raised," they may be transferred to the general fund. *Union P. R. Co. v. Dawson County,* 12 Nebr., 254; *Union P. R. Co. v. York County,* 10 Nebr., 612. The statute does not authorize the county board to make an excessive levy for other funds, and before the

---

* Cobbey, Annotated Statutes, sec. 4508.

claims chargeable to such funds have been paid, and even before the taxes are collected for that purpose, transfer to the general fund such part of the levy as the board may suppose will not be required for the purpose for which it was levied. Such construction of the law would render the constitutional provision against excessive levies wholly nugatory. The attempted transfer of these levies being invalid, these warrants were in excess of 85 per cent. of the levy for the general fund. It was provided by section 34 of the revenue act of 1879 (Session Laws, p. 365) : "It shall not be lawful for any warrant to be issued for any amount exceeding in the aggregate 50 per cent. of the amount levied by tax for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same." And by section 36: "Any warrant drawn after 50 per cent. of the amount levied for the year is exhausted, and where there are no funds in the treasury for the payment of the same, shall not be chargeable as against the county, but may be collected by civil action from the county board making the same, or any member thereof."

In 1881 both of these sections* were amended so as to specify 75 per cent. in place of 50 per cent. in each of the sections, and in 1883 section 34 was again amended so as to increase the amount of warrants authorized to be issued to 85 per cent. of the levy; but section 36 remains as amended by the act of 1881, so that it now provides that any warrant drawn after 75 per cent. of the amount levied for the year is exhausted, and where there are no funds in the treasury for the payment of the same, shall not be chargeable against the county, but may be collected by civil action against the county board making the same, or any member thereof. In any view that may be taken of the effect of these several amendments, there can be no doubt that warrants drawn after 85 per cent. of the amount levied for the year is exhausted are not chargeable against the county

---

* Compiled Statutes, 1901, ch. 18, art. 1, secs. 34, 36; 2 Cobbey, Annotated Statutes, secs. 4452, 4454.

where there are no funds in the treasury for the payment of the same. There is no merit in the suggestion that the county is estopped by the indorsement on the warrants to assert that the levy for the general fund was less than the amount so indorsed. If the county board could bind the county in this manner, it could evade all restrictions on the amount of the levy. It follows that the plaintiff can not recover upon the warrants so drawn, and the judgment of the district court thereon is right.

2. As to the plea of the statute of limitations, it appears that the warrants to which this defense is urged were issued at various times from the 27th day of July, 1893, to the 1st day of March, 1894, inclusive, and that this action was begun on the 17th day of May, 1899. It is insisted that as more than five years had elapsed from the issuing of the warrants to the time of the commencement of the action the action as to those warrants is barred by the statute of limitations. In *Brewer v. Otoe County,* 1 Nebr., 373, it was held that "the statute of limitations does not limit the time within which proceedings to enforce the payment of county warrants shall be instituted." This holding was predicated largely upon statutes then in force, but which have since been superseded. And in *Arapahoe Village v. Albee,* 24 Nebr., 242, this court, by MAXWELL, J., after quoting somewhat at large from the opinion of Judge LAKE in *Brewer v. Otoe County, supra,* said: "In view of this and other special legislation in regard to county warrants, the court held that they were excluded from the operation of the statute of limitations. That decision is no doubt correct as applied to the facts of that case. A considerable part of the debts for which these warrants were issued was incurred before the act 'To prevent overdrawing public funds in counties,' etc., was passed. Laws of 1859, pp. 101, 102. Prior to the passage of that act there was practically no restriction upon the power of county commissioners to issue warrants, and in more than one county this power had been recklessly exercised, and a very large number of warrants issued.

Hence the necessity for special legislation. We know of no legislation, however, which prevents the statute from running in favor of cities and villages." If it is thought that the statute of limitations may apply to county warrants, as the law now is, still we think that the answer in this case fails to sufficiently plead that defense. The answer alleges in general terms that all of these warrants specified are barred by the statute of limitations, and shows that more than five years elapsed from the time of the issuing of the last warrant to which this defense is interposed to the commencement of this action. It will be noticed that this defense is predicated upon the assumption that the statute began to run very soon (less than three months) after the warrants were issued, and there is no allegation that there was at that time money in the fund on which they were drawn. In *Brewer v. Otoe County, supra,* it was held that the action could not be maintained, because the petition shows that "the several warrants were drawn upon the treasurer, payable out of any money in the treasury not otherwise appropriated. This must be considered as a provision for their payment out of any money belonging to the general fund then in the treasury which should be afterwards collected." And the court said: "Whoever deals with a county and takes in payment of his demand a warrant of the character of these, no time of payment being fixed, does so under an implied agreement that if there be no funds in the treasury out of which it can be satisfied, he will wait until the money can be raised in the ordinary mode of collecting such revenues. He is presumed to act with reference to the actual conditions and the laws regulating and controlling the business of the county. He can not be permitted, immediately upon the receipt of such warrant, to resort to the courts to enforce payment by judgment and execution, without regard to the condition of the treasury at the time, or the laws by which the revenues are raised and disbursed." The principle involved is clearly stated in the syllabus: "A petition alleging the issue and non-payment

of a county warrant, without alleging that there is money in the treasury for its payment, or that time has elapsed for the collection of the money by taxation, will be dismissed without prejudice." Whatever view we might have taken of this matter, if it were an original question, we are inclined to adhere to this holding, which has so long been unquestioned. And the doctrine is not without support in our statutes, as construed in more recent cases. It is a well-settled rule in this state that "a county board is invested with the exclusive original jurisdiction to hear and determine, to allow or disallow, all claims filed against the county; that a county board, in passing upon a claim filed against the county, acts judicially, and that its decision in the premises, if unappealed from, is final." *Heald v. Polk County,* 46 Nebr., 28, and cases cited.

The county not being liable to suit upon a claim until the county board has acted thereon, it would seem to be reasonable to suppose that the legislature intended that no suit should be brought against the county until such claim, when allowed, might be paid by the county in the ordinary course as prescribed by statute, so that no right of action accrued to the plaintiff upon these warrants until there was money for their payment in the fund upon which the warrants were drawn, or the proper authorities had had opportunity to provide funds to pay them and had neglected to do so. *Apache County v. Barth,* 53 Pac. Rep. [Ariz.], 187; *Potter v. City of New Whatcom,* 20 Wash., 589, 56 Pac. Rep., 394, 72 Am. St. Rep., 135. In the case at bar, then, this right of action did not accrue five years before the action was brought, and plaintiff should be allowed to recover on these warrants. The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.