41 So.2d 749

## COURT OF COUNTY REVENUES FOR LAWRENCE COUNTY et al. v. RICHARDSON.

### 8 Div. 516.

Supreme Court of Alabama.

June 23, 1949.

R. L. Almon and Thos. Pettus, of Moulton, and S. A. Lynne, of Decatur, for appellants.

Julian Harris and Norman W. Harris, of Decatur, for appellee.

STAKELY, Justice.

This case presents two separate appeals, which by agreement of the parties are consolidated and shown by one record and submitted together. Appellee has made cross assignments of error in each appeal. One appeal is from a decree overruling appellants' demurrers to the bill of complaint as as whole and to several phases of the bill. In that appeal the appellee cross assigns as error that part of the decree which sustained appellants' demurrer to one phase of the bill. The other appeal is by the same appellants from a decree granting a preliminary injunction on application of appellee after notice and hearing. In that appeal the appellee cross assigns as error that part of the decree which denied his application in one respect.

The bill of complaint was filed by J. B. Richardson (appellee) as a taxpayer suing for himself and over 4,000 other taxpayers similarly interested against Lawrence County, the governing body of the county and the individual members thereof, the county depository, the tax assessor and the

tax collector. All of the respondents are appellants here except the last two.

Both the tax assessor and tax collector appeared and filed an answer admitting the allegations of fact contained in the bill and praying for instructions from the court as to their official duties in the premises. They submitted themselves to the jurisdiction of the court and waived notice of further proceedings in the cause.

The bill sought a declaratory judgment as to the rights of Lawrence County to make further collection of a special three mill courthouse tax and as to the purposes for which proceeds of the tax on hand could be used. It also sought to enjoin further assessment and collection of the tax and to enjoin any expenditures or disbursements of the proceeds of the tax for any purpose other than the payment of the courthouse bonds for the payment of which the tax was authorized and levied. It also sought to require the county to restore to the special fund into which the collections from the courthouse tax were required to be deposited all amounts illegally diverted from that fund. The bill finally prays that the amount by which the courthouse tax proceeds on hand exceeded the amount necessary to pay principal and interest on the outstanding courthouse bonds, be declared a trust fund for the benefit of the taxpayers who have paid the same during the last tax year and be distributed to them in accordance with their respective interests therein after deducting therefrom court costs and a reasonable solicitor's fee.

Since the rights and obligations of the parties grow out of amendment XXX to the Constitution of Alabama, we think it will be helpful to set out this amendment at this time.

"XXX

Lawrence County Bonds.

"Lawrence county may become indebted and may issue bonds therefor in an amount not exceeding $130,000 in addition to that now authorized, for the construction of and equipping of a courthouse in said county. To pay said indebtedness, and interest thereon, Lawrence county may levy and collect an annual tax on all property sit-uated therein at a rate not in excess of 3 mills. The indebtedness, the bonds and the tax authorized hereby shall be in addition to those authorized prior to the adoption of this amendment. But no such additional indebtedness shall be incurred, no such bonds shall be issued and no such tax shall be levied until the estimated cost of construction and equipping of said courthouse hereby proposed to be built, its time of completion, and the amount of the increased indebtedness, the rate of interest to be paid thereon, and the period over which the bonds to be issued will be refunded, shall have been determined upon and made public by the county governing body of said county; and the proposed increase in indebtedness and the issuance of bonds and the increase in rate of taxation first shall have been authorized by a majority of the qualified electors of said county voting upon such proposal at an election to be called by said county governing body for said purposes to be held not less than sixty (60) nor more than (120) one hundred twenty days after the adoption of this amendment."

The legislature adopted an enabling act, Local Acts of Alabama 1935, p. 257, which contained the following provisions:

"Section 1. That the Governing Body of Lawrence County be and it is hereby empowered, authorized and directed to order an election, as hereinafter provided, to submit to the qualified electors of said county a proposal to authorize said county to issue bonds in a sum not exceeding $130,000 for the purpose of constructing and equipping a courthouse and jail building, and to levy and collect over a period not exceeding twenty-five (25) years, a tax on all taxable property in said county at a rate not exceeding three mills, to provide a fund for the payment of the principal and interest of said indebtedness.

*    *    *    *    *    *

"Section 6. If upon a canvass of the returns of said election, it shall be determined that a majority of the qualified electors of the county participating therein have voted for the proposal, the county governing body shall proceed to the construction and equipping of said courthouse and jail building by advertising for bids

therefor, as in such cases made and provided; and shall proceed to levy a tax authorized by said election, and shall continue the same for the period of years specified upon said ballot. And the said Governing Body shall proceed to issue and sell bonds for not more than the amount authorized by said election to finance the construction and equipping of said courthouse and jail building."

The averments of the bill show that pursuant to amendment XXX the voters of Lawrence County at an election held on March 10, 1936 authorized the county to borrow $130,000 for constructing and equipping a courthouse and authorized the levy of a tax of not more than three mills annually over a period of not exceeding 25 years for the purpose of paying the indebtedness. The proposal submitted to the voters at the special election was as follows: "Shall the indebtedness of Lawrence County be increased by issuance and sale of bonds in the amount of not more than $130,000.00 and said sum expended upon the construction and equipping of a courthouse and jail building; said bonds to bear interest at a rate of not exceeding 6% per annum, payable annually (or payable semi-annually) and to mature not later than Twenty-five (25) years from issue date (or to mature not less than 1/25 portion thereof annually on the anniversary of issue over a period of Twenty-five (25) years.) The said indebtedness of not more than $130,000.00 to be paid by the levy of a tax in addition to all of the taxes now levied and collected, on all taxable property situated in Lawrence County, of not exceeding three mills; the said tax to be levied and collected annually over a period of not exceeding Twenty-five (25) years. The said courthouse and jail building to be completed within twenty-four (24) months of the date of the approval of its construction by a majority of the qualified electors participating in this election."

After the foregoing election the county issued 130 courthouse bonds in the principal sum of $1,000 each and in the aggregate amount of $130,000 bearing interest at the rate of 4½ percent per annum payable semi-annually on April 1st and October 1st with the principal payable as follows: April 1, 1937 $5,000; April 1, 1938 $5,000; April 1, 1939 $6,000; April 1, 1940 $6,000; April 1, 1941 $6,000; April 1, 1942 $7,000; April 1, 1943 $7,000; April 1, 1944 $7,000; April 1, 1945 $8,000; April 1, 1946 $8,000; April 1, 1947 $8,000; April 1, 1948 $8,000; April 1, 1949 $9,000; April 1, 1950 $10,000; April 1, 1951 $10,000; April 1, 1952 $10,000; April 1, 1953 $10,000.

On April 13, 1936 the Court of County Revenue levied the 3 mill courthouse tax for the years 1936 to 1952, inclusive, its resolution being as follows: "Under and by virtue of the Constitution and Laws of the State of Alabama, the Board of Revenue, or Court of County Revenues, does hereby levy the following special taxes, known as the Courthouse tax, the same to be in addition to all other general and special taxes now levied in this county, on all property and subjects of taxation within this county for the year 1936, and each succeeding year thereafter until and including the year 1952, to-wit: Three tenths of one percentum or thirty cents on each hundred dollars worth of taxable property to be used exclusively for the construction of and equipping a courthouse in Lawrence County, Ala. Said tax so levied shall be used only for the construction and equipping of a courthouse in said County and shall, when collected, be kept separate and apart from any other general or special tax and shall not be used or pledged for any other purpose or purposes than herein stated."

All of the bonded indebtedness has been paid that was due up to and including April 1, 1949, leaving an unpaid balance totaling $40,000 maturing in aggregate amounts of $10,000 each in 1950, 1951, 1952 and 1953. These bonds are not callable. The balance in the depository in the special courthouse retirement fund is $44,-500.

The allegations of the bill show that the courthouse tax has produced a surplus and that the county has on hand as a result of collections from the courthouse tax an amount more than sufficient to pay the outstanding bonds both as to principal and as to interest to accrue in the future. Part of this surplus was invested in United

States bonds of the face amount of $39,500 and part of it was in cash. These figures will be set out in greater detail in discussing the evidence offered on the hearing of the application for preliminary injunction.

The allegations of the bill further show that despite the protests of appellee and without regard to his negotiations with the governing body of the county in an effort to prevent any further levy of the courthouse tax, it proceeded to levy the courthouse tax of three mills for the current year October 1, 1948 to September 30, 1949 and delivered to R. C. Jackson as Tax Assessor of Lawrence County a copy of the resolution of the board which said resolution levied the following taxes for the said tax year, namely;

| | |
|---|---|
| General fund | 5 Mills-Sec 215, Constitution of 1901 |
| Road and Bridge Fund | 2-1/2 Mills Sec 215, Const. of 1901 |
| County Wide School | 1 Mill Sec 269, Constitution of 1901 |
| County Wide School | 3 Mills-Sec 1, Amendment 3, Const. 1901 |
| Special District School Tax | 3 Mills-Sec 2, Amendment 3, Const. 1901 |
| Special Court House Fund | 3 Mills-Amendment 30, Const. 1901. |

It is further charged in the bill that on January 3, 1949 the county governing body adopted a resolution directing that all United States bonds held in the courthouse retirement fund ($39,500) be reduced to cash and that the proceeds be placed in the general fund of the county. It is alleged that the appellee has made demand on the county depository for information as to whether or not the bonds have been cashed and what disposition made of the proceeds but that the depository has refused to furnish the information. It is accordingly alleged on information and belief that $20,000 of the government bonds had been cashed and the proceeds deposited in the county general fund. It is further alleged that the county governing body hopes to expend for general county purposes the proceeds of the tax transferred to the general county fund. The bill contains allegations of justiciable controversies between the complainant and defendants as to the right of the county to make further collection of the tax and as to the uses to which the proceeds of the tax can be put.

The verified bill of complaint was presented to Hon. James H. Crow, Jr., and application was made for a preliminary injunction. (The bill of complaint was once amended but through this opinion we have made no reference to the bill as amended and have regarded the bill as though originally filed.) On the hearing of the preliminary injunction the defendants did not controvert any allegation of the verified bill which was noted in evidence. The allegations of the bill were supported by records of the county governing body, the records of the county depository and the affidavits of R. C. Jackson and A. A. Carmichael, which were introduced in evidence. It is our understanding that the facts in the case are without dispute.

The special account in which the collections from the courthouse tax were deposited is referred to as the "Courthouse Bond Retirement Fund." The status of this account on October 1, 1948 and subsequent transactions with reference to it are set out as follows:

On October 1, 1948 the Bank of Moulton was acting as county depository and it continued to act in that capacity until December 31, 1948, at which time the Citizens Bank of Moulton was designated as county depository.

On October 1, 1948 the county depository had on hand in the courthouse bond retirement fund in cash the sum of $9,883.68 and in United States Bonds the sum of $39,590 principal with a substantial interest accrual thereon. As taxes were collected in October, November and December the 3 mill courthouse tax collections were deposited in the fund. On December 23, 1948 the balance in the fund was $21,100.27, all of which was on that day withdrawn from the fund, $11,423.77 being transferred to the county general fund and $9,676.50 being transferred to a new special fund styled "Courthouse Bond Retirement Fund Es-

crow Account," which account was closed on December 31, 1948 by the transfer of that amount to the former "Courthouse Bond Retirement Fund." The retransfer of this item of $9,676.50 added to tax collections between December 23, 1948 and December 31, 1948 made a balance in the fund of $11,825.72 which was transferred on the latter date to the Citizens Bank of Moulton upon its becoming county depository and placed in an account styled "Courthouse Retirement Fund."

On February 2, 1949 by virtue of the order of the county governing body made on January 3, 1949 the United States bonds, which were a part of the courthouse bond retirement fund, were cashed and the county received from them the sum of $42,488 which was deposited in the county general fund.

Further tax collections from the courthouse tax were placed in the bond retirement fund and on March 22, 1949 a temporary restraining order was issued to prohibit any disbursements from the special fund except to pay principal and interest on the courthouse bonds. The April 1, 1949 installment due on the courthouse bonds in the sum of $10,102.50, being $9,000 principal and $1,102.50 interest, was paid from the special fund.

On April 4, 1949, the day before the hearing on the application for preliminary injunction, the county transferred the sum of $38,746.27 from its general fund to the "Courthouse Retirement Fund" and this created a balance in that account of $44,500, the exact amount necessary to fully pay and discharge the outstanding courthouse bonds, both as to principal and as to interest which would accrue as they became payable.

The foregoing details as to the diversions and restorations of the special courthouse retirement bonds, with one or two small items which need not be enumerated here, will be summarized as showing total diversions in the aggregate amount of $63,948.27 and total restorations in the amount of $48,422.77, the net amount diverted being $15,525.50.

The circuit court, after the hearing, granted a temporary injunction to prohibit the assessment and collection of the courthouse tax for the current tax year and to prohibit the expenditure of any part of the $44,500 on deposit in the courthouse bond retirement fund for any purpose other than the payment of principal and interest on the courthouse bonds. It denied the appellee's application for a preliminary injunction to prohibit the expenditure of proceeds of the 3 mill courthouse tax which were on hand in excess of said sum of $44,500 and to require the restoration of the amount diverted from the special fund. Appellee cross assigns error as to this denial.

The circuit court rendered a decree overruling the demurrers to all phases of the bill except that phase seeking a decree declaring the proceeds of the courthouse tax in excess of $44,500 to be a trust fund for the benefit of certain taxpayers and to enjoin the expenditure of such alleged trust fund and sustained the demurrers to that phase of the bill. Appellee cross assigns as error the decree sustaining the demurrers to this phase of the bill.

■■■ 1. As preliminary to a determination of the substantive rights of the parties, we think that the remedy pursued in the present case is appropriate and available. The equity of the bill can be based on the jurisdiction of equity to render declaratory judgments, to enjoin the misappropriation of public funds and to enjoin the collection of an illegal tax under the peculiar circumstances of this case.

The tax demands in the present case will recur over a period of years and the taxpayers will be left in a state of uncertainty and required to pay a number of amounts involving multiplicity of suits. The controversy involves the legality of action of public officials and questions presented are of considerable public interest. To all of this may be added the liberal construction which we are admonished to give to Section 167, Title 7, Code of 1940, by the legislature. The allegations of the bill are adequate to present a case for declaratory judgment. Donoghue v. Bunkley, 247 Ala. 423, 25 So.2d 61; Thompson v. Chilton County, 236 Ala. 142, 181 So. 701; Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11; Nachman v. State Tax Commission, 233 Ala. 628, 173

So. 25; General Acts 1947, p. 444, Code 1940, Tit. 7, § 167.

■ There is no doubt that a taxpayer may maintain a bill in equity to enjoin illegal expenditure, appropriation or diversion of public funds. Travis v. First National Bank, 210 Ala. 620, 98 So. 890; Reynolds v. Collier, 204 Ala. 38, 85 So. 465; Thompson v. Chilton County, supra.

■ Ordinarily a court of equity will not interfere by injunction with the collection of public revenue, but will leave the complaining party to his remedy at law. This principle was stated in the case of Nachman v. State Tax Commission, supra, as follows [233 Ala. 628, 173 So. 28]:

"This court has tenaciously held to the rule that taxpayers cannot resort to a court of equity 'to enjoin the collection of a tax claimed to be illegal, unless with the illegality of the tax there is connected some recognized ground of equitable jurisdiction.' * * *

"Of course, if the taxpayer should pay the tax under protest, but has no adequate and complete remedy at law to recover the money paid, if its payment was illegally exacted, this would justify the interposition of a court of equity to restrain the collection until there could be a judicial determination of the legality of the tax. There may be, and doubtless are, other cases in which it would be permissible for the taxpayer to resort to a court of equity for relief by injunction."

■ The reasons which move us to put the present case within the class of cases in which equity will interfere by injunction may be enumerated as follows. These reasons are considered together because separate consideration is unnecessary.

1. Under the allegations of the bill further collection of the tax in question will be unnecessary and therefore illegal.

2. The tax involved is a special tax rather than one on which the county has a right to depend for its general functions.

3. The resolution adopted by the court of county revenues on April 13, 1936, set out in full heretofore in this opinion, attempted to levy the tax for the year 1936 and each succeeding year thereafter until and including the year 1952, a levy for the year in which this suit was filed and for the three succeeding years, thereby creating a situation such that successive suits would be required each year to recover the illegal tax.

4. All the taxpayers of Lawrence County, over 4,000 in number, would be affected by the tax and would be entitled to file petitions for refund and upon the denial of them to file suits against the county to recover the tax, thereby creating confusion and multiplicity of suits.

5. The great majority of these taxpayers are landowners and the tax levy constitutes a cloud upon the title to their real estate, since the illegality depends upon the fact that more money is on hand than necessary to pay the outstanding bonds, a matter depending on evidence dehors the county record.

6. The record establishes, without conflict in the evidence, that further collection of the tax is not necessary.

The case of Shanks v. Winkler, 210 Ala. 101, 103, 97 So. 142, 143, involved a special 3 mill school tax, the levy of which was void because notice of the election was not given for the time required by law. The proceedings, however, of the commissioners' court levying the tax were regular and valid on their face. The tax was levied for a period of six years. This court held that the case was a proper one for injunction prohibiting collection of the tax and said. "There is no denial of the general rule that, unless some recognized ground of equitable interference is shown, other than mere illegality, hardship, or irregularity in respect of the levy or assessment of the tax, a bill to enjoin its collection will not be entertained. Adams v. Southern Railway, 176 Ala. [320] 323, 58 So. 397, and cases there cited. The equity of the bill is placed upon two grounds: (1) That the record of the commissioners' court is regular in itself, disclosing no flaw in the proceedings for the authorization and collection of the tax in question, so that resort to evidence dehors the record is necessary to establish its invalidity, and hence that the record and the

lien of the tax levied in pursuance thereof constitute a cloud upon the titles to all the lands in the school tax district; and (2) the tax has been levied for a period of 6 years, and will be collected annually, so that a multiplicity of actions at law will be necessary for its recovery from year to year in the absence of the equitable relief sought by the bill. The case averred involves no necessity for an apportionment of taxes, no occasion for a new assessment, no interference with the regular revenue of the state or county, and, in our judgment, the considerations stated above suffice to sustain the equity of the bill as against the contention that complainants should pay the tax and seek to recover it by actions at law. * * *"

Special reference to the statutes authorizing recovery of taxes illegally collected was also made in the opinion in the foregoing case and in this connection this court said. " * * * Appellees refer to section 2345 of the Code of 1907 as affording complainants, appellants, adequate relief at law; but our opinion is that this section does not reach to cases in which grounds of relief peculiar to equity are asserted." See also Mayor of Mobile v. Baldwin, 57 Ala. 61, 71, 29 Am.Rep. 712; City of Chicago v. Collins, 175 Ill. 445, 51 N.E. 907, 49 L.R.A. 408, 67 Am.St.Rep. 224; Ogden v. City of Armstrong, 168 U.S. 224, 18 S.Ct. 98, 42 L.Ed. 444.

■ II. It is apparent from the statement of the case that the county has on hand in cash an amount of money collected from the 3 mill courthouse tax substantially in excess of the amount required to pay fully the outstanding courthouse bonds both as to principal and as to interest to accrue thereon in the future. Amendment XXX to the Constitution without which Lawrence County would have no power or authority to levy the tax, authorized the tax for the sole specific purpose of paying the debt incurred to provide a courthouse. Authority to levy the tax for a specific purpose does not authorize the levy of such tax for any other purpose. Southern Ry. Co. v. Jackson County, 189 Ala. 436, 66 So. 570; Hagan v. Commissioners' Court of Limestone County, 160 Ala. 544, 49 So. 417, 37 L.R.A.,N.S., 1027; People v. Mil-

lard, 307 Ill. 556, 139 N.E. 113; 15 C.J. p. 635; 20 C.J.S., Counties, § 282.

■ Since authority to levy a tax for a specific purpose does not authorize the levy of such tax for any other purpose, it follows as a general proposition that when taxes have been levied for a specific purpose, collections of the tax cannot be used for any other purpose. In re Opinions of the Justices, 231 Ala. 152, 157, 164 So. 572, 573; First Nat'l Bank of Birmingham v. Walker County Board of Education, 243 Ala. 576, 11 So.2d 297; Carroll v. Williams, 109 Tex. 155, 202 S.W. 504; Wolff Chemical Co. v. City of Philadelphia, 217 Pa. 215, 66 A. 344; Thompson v. Pierce County, 113 Wash. 237, 193 P. 706; Harding v. Board of Supervisors, 213 Iowa 560, 237 N.W. 625.

■ It is true that the enabling act authorized the levy of the special courthouse tax for a period "not exceeding twenty-five (25) years." It is also true that the enabling act authorized submission to the qualified electors of a proposal to issue bonds in a sum not to exceed $130,000 for the purpose "of constructing and equipping a courthouse and jail building." The proposal submitted to the voters was whether the proceeds from the sale of bonds of not more than $130,000 "shall be expended upon the construction and equipping of a courthouse and jail building." We, of course, understand that the power of the legislature over taxation is unlimited except as restricted by the constitution. However, the allegations of the bill show that the assessment made in the present case will exceed constitutional limitations as set forth in section 215 and other sections of the constitution, unless the tax is authorized pursuant to amendment XXX. And so the enabling act and the levies of the county governing body cannot be broader than the amendment XXX to the constitution which authorized the levy of the tax for the specific purpose alone of paying the courthouse bonds.

■ Under the circumstances we think it follows that there is no basis for authority to collect the tax any further. The court acted correctly in ruling in effect that the levy of the tax by the governing

body of the county on February 1, 1949 for the tax year which began October 1, 1948 and ends on September 30, 1949, is void. We also agree that the court acted correctly in invalidating in effect the levy made on April 13, 1936 for the current and tax year beginning October 1, 1948 and ending September 30, 1949 and also for the tax years subsequent to September 30, 1949. Of course the court will retain jurisdiction to make such orders as may be necessary in future years for the protection of holders of outstanding bonds.

III. This brings us to a consideration of the rights of the parties with reference to the proceeds of the tax which have been collected and are on hand and which are in excess of the amount necessary to pay the principal and interest on the outstanding bonds. The court refused to hold this excess amount as a trust fund for the benefit of the taxpayers and declined to enjoin transfer of this excess amount to the general fund of the county for disbursement for purposes other than construction of the courthouse. It is insisted by the appellee on his cross assignments that the tax under amendment XXX is a constitutional tax for a specific purpose and cannot be applied to a different purpose. We do not have a provision in amendment XXX as there was in amendment XXV expressly providing that the income derived from the tax shall be used exclusively for certain purposes. In re Opinions of the Justices, 237 Ala. 276, 186 So. 484. Nor are we now dealing with funds to be collected in the future but only with funds already collected. Section 230, Title 51, Code of 1940, is as follows: "When the object for which such special taxes were levied and collected shall have been accomplished, or for any other reason the same are no longer required for the purpose for which they were levied, the parties charged with the administration or application thereof shall notify the treasurer, or if there be no county treasurer, the custodian of the funds of the county, who shall thereupon close the account of such taxes, and transfer any balance remaining to the account of the general fund of the county."

It seems to us that the provisions of the foregoing statute should be here applied. It is bound to be true that the tax authorities may err in their estimates and the levies ordered may provide more money than is required. Where this is the situation and such moneys are on hand and no longer required for the purposes for which they were raised, we think that such excess may be transferred to the general fund, unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy. We do not have the ordinary case of taking money raised for one purpose and using it for another. Rather we are dealing with a situation where an unexpended and unexpected balance remains after the purposes for which it had been collected, are fulfilled. When the purpose for which the constitutional tax was levied has become accomplished and the money on hand under the foregoing circumstances is no longer needed for the original purpose, we see no reason why the legislature may not authorize its use for another purpose where the constitution does not provide for this contingency. It should be remembered that the legislature has unlimited pwer over the state's internal affairs except when restrained by constitutional prohibition. In the case of Whaley v. Commonwealth, 110 Ky. 154, 61 S.W. 35, 38, in commenting on Section 180 of the Kentucky Constitution providing that "no tax levied for one purpose shall ever be devoted to another purpose," the court said. " * * * In Field v. Stroube, [103 Ky. 114], 44 S.W. 363, we held that, where a surplus remains after the object to be obtained by a particular levy had been accomplished, such surplus might be appropriated by the county, even for general purposes, and that such appropriation was not prohibited by section 180 of the constitution. Such a construction is necessary, because it is impossible to fix accurately a tax rate to meet exactly a liability. Exonerations, delinquencies, or miscalculation, decrease or increase of valuation by supervisors or board of equalization, and other unforeseen circumstances, will, in every probability, produce either a surplus or deficit of tax; and, if a surplus, to hold that it could never be used for any

purpose, except that for which it was specifically levied, would tend to, in time, lay up a public fund entirely unavailable for any public purpose. A construction leading to such an absurd result will be repudiated as not having been within the contemplation of the framers of the constitution."

See also Collins v. Humphrey, 181 Ark. 609, 27 S.W.2d 102; Shelby County v. Farson, Son & Co., 197 Ala. 375, 72 So. 613; Johnson v. City of Sheffield, 236 Ala. 411, 414, 183 So. 265; Godwin v. Board of Suprs. etc., 161 Va. 494, 171 S.E. 521, 525; Avera v. Clyatt, 152 Ga. 280, 109 S.E. 655; People ex rel. Stuckart v. Sanberg Co., 277 Ill. 567, 115 N.E. 743; Bacon v. Dawes County, 66 Neb. 191, 92 N.W. 313; Dellaripa's Appeal, Ann.Cas.1917B, p. 870. We consider that the intention of the legislature with reference to the present situation is evidenced by § 230, Title 51, Code of 1940 and not by any language that may be used in the enabling act.

 IV. It is insisted that the demurrer should have been sustained because it expressly pointed out that the bondholders are not parties to the litigation. " * * * 'All persons interested in a suit in equity, and whose rights will be directly affected by the decree, must be made parties, unless they are too numerous, or some of them are beyond the reach of process, or not in being; and in every case there must be such parties before the court as to insure a fair trial of the issues in behalf of all.' * * *." Jacobs v. Murphy, 245 Ala. 260, 16 So.2d 859; Culley v. Elford, 187 Ala. 165, 65 So. 381.

It appears from the statement of the case that a sufficient amount of money is on hand to pay the principal and interest on the bonds in full to final maturity. But while the money is now on hand it may be that for unforeseen reasons the bondholders may never receive this money and so we are confronted with the problem as to whether a decree should now be entered when the bondholders are not before the court. It may be well argued that in view of the results obtained from the levies to date and the fact that levies can be made, if necessary, for an addi-

tional period of 12 years that the rights of the bondholders as to the outstanding bonds cannot be affected. We do not think, however, that this is a matter on which the court should speculate. There is no allegation that the holders of the bonds are unknown and cannot be ascertained after diligent inquiry. Travis v. First National Bank, 210 Ala. 620, 98 So. 890. If there is any doubt as to whether the rights of the parties not before the court may be affected, we think that doubt should be resolved in favor of the presence of the parties before the court. Turnipseed v. Blan, 226 Ala. 549, 148 So. 116. We, accordingly, are of the opinion that the demurrer to the bill in this respect should also have been sustained.

It results that the decree of the lower court in its ruling on the demurrer is reversed and the demurrer pointing out that the bondholders are not parties is sustained. The ruling of the court with reference to the injunction is sustained and the cause is remanded, the complainant to have the right of amendment for a period of twenty days from the time the certificate of our decree reaches the lower court.

Affirmed in part and in part reversed and remanded.

BROWN, FOSTER and LAWSON, JJ., concur.